518 So.2d 667 (1988)
Donald Wayne WILLIS
v.
STATE of Mississippi.
No. 57399.
Supreme Court of Mississippi.
January 13, 1988.
Fred L. Cooper, Columbia, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, ANDERSON and ZUCCARO, JJ.
ANDERSON, Justice, for the Court:
This case of first impression originates in the Circuit Court of Marion County. Appellant Donald Wayne Willis challenges his conviction and sentence for manslaughter in the death of an unborn fetus. We find no merit in his challenge and therefore affirm the conviction.
Willis was convicted of murder in the 1981 shooting death of Brenda McLendon. This conviction was upheld by this Court at 475 So.2d 163 (Miss. 1985).
At the time of her death, Mrs. McLendon was seven months pregnant with a quick, male child. Appellant was thereafter indicted in June of 1982 for manslaughter in the death of the unborn fetus under Mississippi Code Annotated Section 97-3-37 (1972). Appellant demurred to the indictment and the trial court sustained the demurrer, dismissing the indictment. The state appealed this ruling to the Supreme Court which reversed the trial court and *668 upheld the legal sufficiency of the indictment in the death of the unborn child. State v. Willis, 457 So.2d 959 (Miss. 1984).
Appellant was thereafter tried in this cause and found guilty. He was sentenced to twenty years imprisonment and now appeals from this manslaughter conviction and sentence, challenging only the sufficiency of the evidence.

I
At about 12:30 a.m. on October 31, 1981, Donald Wayne Willis went to the home of Michael and Brenda McLendon in Improve, MS. Willis said he urgently needed to talk to Mr. McLendon and explained he was carrying a shotgun because he had been rabbit hunting. Upon entering the home Willis threatened to kill McLendon, accusing him of having reported some incident to the police. Willis also threatened to kill McLendon's wife who was seven months' pregnant and present in the room at the time.
After about five hours of talk, Willis directed McLendon to go to the bathroom, so he could "do what he came to do." As Willis put the gun to McLendon's head, the front door slammed. Willis immediately turned and gave chase to Mrs. McLendon, who had left the house, attempting to run to her father-in-law's home approximately 200-300 yards away. Mr. McLendon followed Willis as he pursued Mrs. McLendon. As they ran along the path, McLendon heard four gunshots. He then heard Willis run back in his direction. McLendon hid in the bushes until Willis had gone. He then discovered his wife's bloodied body in his father's yard. He and his family took her to a local hospital, where she was dead on arrival. Neither McLendon nor his wife had any weapon.
Willis was found shortly afterward hiding in the loft at his aunt's residence. An unspent .12 gauge live shell was found in Willis' pocket. The sheriff also recovered four spent hulls along the path Mrs. McLendon had travelled before being shot. The weapon used was also recovered.

II.
The sufficiency of the indictment was upheld in an earlier decision by this Court. The only issue now before the Court is the sufficiency of the evidence.
Appellant alleges that the state failed to prove all of the elements charged in the indictment. In particular (1) that he knew Mrs. McLendon was pregnant, (2) that the child was "quick" within the meaning of the statute, and (3) that the killing of the fetus was wilful.
As to Willis' knowledge of Mrs. McLendon's pregnancy, there was unrefuted testimony that she was obviously pregnant and in her seventh month. Contrary to Willis' contention, there is substantial evidence that he knew the victim personally and also knew or should have known of the pregnancy.
Furthermore, Willis lived with the victim's brother-in-law about one-tenth of a mile away and visited often in the home during her pregnancy.
Photographs of Mrs. McLendon also confirmed the "obviousness" of her pregnancy. Based on the facts, there is more than sufficient evidence to find that Willis knew Mrs. McLendon was pregnant.
Secondly, appellant challenges whether the child was proven to be "quick" as used in the statute. A "quick child" has been defined as one that has developed so that it moves within the mother's womb. Black's Law Dictionary, 4th ed., p. 1415 Accord: Shirley v. Bacon, 154 Ga. App. 203, 267 S.E.2d 809, 811 (1980).
The state presented the testimony of Michael McLendon to the effect that at times prior to the shooting he had placed his hand over Brenda McLendon's stomach and had felt the unborn child move. In addition, Dr. Sergio Gonzalez offered expert medical testimony that babies move in the womb from roughly the tenth week of gestation, and this baby was almost thirty-two weeks, fully developed for this stage, without abnormalities, in good health and able to move about.
*669 The state's evidence was unrefuted and in light of the evidence, this assignment of error is meritless.
Finally, appellant claims the state failed to prove a wilful intent to harm the child.
This precise question of intent was addressed in Tarver v. State, 651 P.2d 1332 (Okla. 1982). In that case, Tarver shot and killed his wife who was more than eight months pregnant. The shooting resulted in the death of the unborn child for which Tarver was convicted of manslaughter. Tarver alleged on appeal that "the state failed to prove the child's death was caused by a `wilful' act on his part." That Court held:
The appellant, in advancing this argument, equates "willful" with "specific intent." He claims the State did not prove that he specifically intended to kill the unborn child... . In Lamb v. State, 293 P.2d 624 (Okl.Cr. 1956), we held that the word "willfully" is equivalent to "knowingly," as opposed to "accidentally" or "involuntarily."
* * * * * *
It follows that "willfully" refers to the actor's subjective state of mind. The prosecution must establish that the accused engaged in the conduct, inflicting injury upon the person of the mother, with the awareness that the death of the unborn quick child would likely result.
* * * * * *
The jury could reasonably infer from these facts that appellant "willfully" pulled the trigger. Moreover, it is reasonable to infer that the appellant was aware that the gunshot wound inflicted on his pregnant wife would likely result in the death of the unborn quick child.
651 P.2d at 1334, 1335.
We agree with the reasoning of the Tarver court. Further, in addressing the question of wilful intent in analogous situations, this Court has said:
Intent to do an act or commit a crime is also a question of fact to be gleaned by the jury from the facts shown in each case. The intent to commit a crime or to do an act by a free agent can be determined only by the act itself, surrounding circumstances, and expressions made by the act with reference to his intent. Shanklin v. State, 290 So.2d 625, 627 (Miss. 1974).
Too, criminal intent may be proved by circumstantial evidence. Stinson v. State, 375 So.2d 235 (Miss. 1979). Intent may be determined from the acts of the accused and his conduct and inferences of guilt may be fairly deducible from all the circumstances. Newburn v. State, 205 So.2d 260 (Miss. 1967).
Shive v. State, 507 So.2d 898, 900 (Miss. 1987).
In the case at bar, Willis threatened the victim and then wilfully fired four shots at her with a shotgun, knowing that this would likely result in the death of the unborn child as well. We find that appellant's wilful intent could reasonably be inferred from his conduct and that the jury had before it substantial evidence to support its verdict.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.