760 So.2d 28 (1999)
George SITTON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00459-COA.
Court of Appeals of Mississippi.
October 12, 1999.
Rehearing Denied November 19, 1999.
J.B. Van Slyke Jr., Hattiesburg, Attorney for Appellant.
*29 Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
DIAZ, J., for the Court:
¶ 1. The original opinion is withdrawn and the following is substituted. The motion for rehearing is denied.
¶ 2. George Sitton was convicted by the Circuit Court of Forrest County on two counts of assault, two counts of manslaughter and one count of murder arising from a February 29, 1996 incident which left Donna Ware and her unborn twins dead. He now appeals his conviction and sentence to this Court, asserting that the circuit court erred in allowing into evidence an autopsy picture of the babies; that the State's evidence was insufficient to establish the elements of manslaughter pursuant to Miss.Code Ann. § 97-3-37 (Rev.1994); and that the circuit court failed to apply the correct standard for insanity. Finding no merit to these assignments of error, we affirm the judgment of the court below.

FACTS
¶ 3. Donna Ware died of massive internal injuries after she was struck by a van driven by George Sitton. Ms. Ware was nearly seven months pregnant at the time of her death. Her unborn twins, a boy and a girl, died as the result of injuries to her abdominal area, which caused the placenta to separate from her uterus.
¶ 4. Sitton, an Illinois resident, was passing through Hattiesburg, Mississippi on February 29, 1996. He has a long history of mental illness and has been diagnosed variously as suffering from a bipolar disorder, a schizoaffective disorder, bipolar type, as well as paranoid schizophrenia. At the time of the his arrest, Sitton was not taking any medication, and he tested negative for both drug and alcohol use.
¶ 5. Ms. Ware and Margaret Bouchee had gone to the post office on Forrest Street to pick up Mrs. Bouchee's mail. A white van driven by George Sitton pulled in behind Mrs. Bouchee's car. Ms. Ware got out of the car to go inside the post office. Sitton motioned for Ms. Ware to come over; she spoke with him for a moment and went inside. When she returned to the car, Mrs. Bouchee said that Ware had told her that "[s]ome white man talking crazy" was in the van, but did not repeat what he had said. Sitton later told authorities he had asked Ware to get in the truck.
¶ 6. Mrs. Bouchee pulled out of her parking place and headed southwest on West Pine Street, where her car was rammed in the rear by Sitton's van. He continued to ram the back of the Bouchee vehicle as Mrs. Bouchee drove around the block, up Main Street and across 7th Street in an attempt to evade him and go to the police station. The two women decided that when they reached Vernon's Liquor Store at the corner of East 7th Street and Mobile, they would jump out.
¶ 7. The Hattiesburg Police Department received reports of a white van chasing a blue Cadillac, as well of accidents involving vehicles that had been hit by either the van or the Cadillac. Officer Antonio Moore responded to the calls and attempted to intercept the Sitton and Bouchee vehicles. He saw the Cadillac pull into the parking lot of Vernon's Liquor Store, where it again was rammed by Sitton's van, sending the Cadillac across the street into the parking lot of the Mount Carmel Multipurpose Center. The van pulled out and made a turn into the day care center behind Mount Carmel Baptist Church and looped back to the liquor store where Officer Moore had positioned his patrol car in an attempt to block the Cadillac from Sitton's van. Officer Moore started to get out of his car and saw Sitton coming toward him, but motioning him out of the way with his hand. The van hit the patrol car, sending Officer Moore over the top of *30 his vehicle. Ms. Ware and Mrs. Bouchee, meanwhile, had jumped out of their car. As Officer Moore was getting up from where he had fallen, he saw the van following Ms. Ware as she ran across the front of the liquor store, around the soda machine and along the side of the building. The van struck her, ran her into the wall, dragging her body up under the wheel and fender well of the right side of the van.
¶ 8. Sitton was taken into police custody without further incident. On May 22, 1996, the grand jury of the Forrest County Circuit Court returned a five count indictment against him. Sitton was charged with one count of aggravated assault for attempting to cause bodily injury to Margaret Bouchee, one count of aggravated assault of a police officer for attempting to cause bodily injury to Officer Antonio Moore, two counts of manslaughter for the deaths of the Ware twins, and one count of murder for the death of Donna Ware.
¶ 9. The circuit court entered an order for mental examination and treatment on June 6, 1996. Sitton was sent to the Mississippi State Hospital at Whitfield for a forensic evaluation, where it was determined that although he had "a major mental disorder" and his ability to appreciate the criminality of his conduct and conform his conduct to the requirements of the law was impaired at the time of the incident, his mental state was not so disordered that he would not have known right from wrong. As a result of the evaluation, it further was determined that he would have known the nature and quality of the acts he committed and that they were wrong. He was found competent to stand trial and capable of assisting his attorney in preparing his defense.
¶ 10. Trial was held January 22 through January 25, 1998, focusing on Sitton's insanity defense. The jury found Sitton guilty on all five charges. He was ordered to serve five consecutive sentences in the custody of the MDOC: twenty years for Count I, aggravated assault; thirty years for Count II, aggravated assault of a police officer; twenty years each for Counts III and IV, manslaughter; and life in prison for Count V, murder. The circuit court overruled Sitton's motion for a new trial or, in the alternative, for a JNOV. Aggrieved by these rulings, Sitton now appeals to this Court.

DISCUSSION

I. WHETHER THE CIRCUIT COURT COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED INTO EVIDENCE A PHOTOGRAPH OF TWO UNBORN FETUSES
¶ 11. Sitton first asserts the circuit court erred in allowing into evidence an autopsy photograph of Ware's unborn twins, who died as a result of the injuries she sustained. He contends that the photograph was prejudicial and had no probative value. We disagree.
¶ 12. "[T]he admissibility of photographs rests within the sound discretion of the trial judge, whose decision will be upheld absent abuse of that discretion.... Yet, photographs which are gruesome or inflammatory and lack an evidentiary purpose are always inadmissible as evidence." McFee v. State, 511 So.2d 130, 134 (Miss. 1987). When considering admissibility, a court must also consider whether the proof is absolute or in doubt as to the identity of the guilty party, and whether the photographs are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury. McNeal v. State, 551 So.2d 151, 159 (Miss.1989); Williams v. State, 544 So.2d 782, 785 (Miss.1987). "A photograph, even if gruesome, grisly, unpleasant, or even inflammatory, may still be admissible if it has probative value and its introduction into evidence serves a meaningful evidentiary purpose." Noe v. State, 616 So.2d 298, 303 (Miss.1993)(citing Lanier v. State, 533 So.2d 473, 484 (Miss.1988)).
¶ 13. Sitton asserts that the picture was prejudicial in its depiction of "small crushed bodies" lying on a table "soaked in *31 their mother's blood." In so stating, he mischaracterizes the photograph, which shows two well-formed infants, one male and one female, lying on a blanket. They are clean and the only visible inference of injury is the presence of several small birthmarks on the face of the male infant.
¶ 14. The picture is of considerable probative value in demonstrating that the babies were "quick" as required to satisfy the elements of manslaughter pursuant to Miss.Code Ann. § 97-3-37 (Rev.1994). Further, Dr. Stephen Hayne, the forensic pathologist, testified that they died as the result of the separation of the placenta from the mother. He indicated, out of the presence of the jury, that the picture of the babies, as well the autopsy photographs of Ware, showed "demonstrative visual support" for the evidence he was delivering verbally. He then testified that the picture illustrated that there was no injury nor abnormality and externally, the fetuses had been in good health. We therefore cannot say that the circuit court abused its discretion in admitting the photograph.

II. WHETHER THE STATE FAILED TO ESTABLISH ALL OF THE ELEMENTS FOR MANSLAUGHTER AS REQUIRED BY MISS. CODE ANN. § 97-3-37
¶ 15. Miss.Code Ann. § 97-3-37 (Rev.1994) provides that "[t]he wilful killing of an unborn quick child, by an injury to the mother of such child, which would be murder if it resulted in the death of the mother, shall be manslaughter." In his second assignment of error, Sitton asserts that the State failed to prove by either direct or circumstantial evidence that he had any knowledge that Ware was pregnant or that the babies were "quick" as required by the statute. The evidence in the record shows otherwise.
¶ 16. Sitton relies on Willis v. State, 518 So.2d 667 (Miss.1988) to support his argument that the State was required to prove that he had knowledge that Donna Ware was pregnant. In Willis, however, proof of the defendant's knowledge of his victim's pregnancy was required to conform with the indictment. Id. at 668. In the case sub judice, the language of neither manslaughter count under which Sitton was charged imputes such knowledge to him and even if it did, the testimony of both Mrs. Bouchee and Dr. Hayne, as well as the autopsy photographs are direct evidence that Ms. Ware was obviously pregnant, nearing the end of her second trimester. Mrs. Bouchee's testimony, as well as that of the arresting officers who took Sitton's statement, establishes that Sitton had talked with Ms. Ware in front of the post office, providing, at the very least, circumstantial evidence that he knew she was pregnant. We note that other jurisdictions which have considered statutes identical to § 97-3-37 have not even addressed the knowledge of pregnancy issue, but focused on whether the fetus was "quick." See, e.g., Hughes v. State, 868 P.2d 730 (Okla.Crim.App.1994); Knighton v. State, 603 So.2d 71 (Fla. 4th DCA 1992); Vo v. Superior Court of State of Ariz., 172 Ariz. 195, 836 P.2d 408 (1992). To find otherwise would preclude the statute's applicability in a panoply of situations such as in Hughes, where an unborn baby, just four days before she was due to be delivered, died as the result of injuries sustained when her mother's car was struck by a vehicle driven by a drunk driver or to acts of random violence such as in Vo, where an unborn baby died when its mother, the passenger in a pick-up truck, was killed in a freeway shooting.
¶ 17. The applicability of § 97-3-37 is expressly limited to the killing of an unborn "quick" child. In Willis, a "quick child" was defined as "one that has developed so that it moves within the mother's womb." Id. at 668 (citing BLACK'S LAW DICTIONARY 1415 (4th ed.)). Accord Shirley v. Bacon, 154 Ga.App. 203, 267 S.E.2d 809, 811 (1980). The testimony of both Dr. Hayne and Mrs. Bouchee establishes that Ms. Ware was late in her sixth month of *32 pregnancy. The autopsy photograph shows two well-developed babies sufficiently mature to have hair on their heads. Dr. Hayne testified that the babies were well-formed and developed to a stage where they could move spontaneously within their mother's womb. From this evidence, we are satisfied that they were "quick" as required by § 97-3-37. There is no merit, therefore, to the assignment of error.

III. WHETHER THE CIRCUIT COURT INCORRECTLY APPLIED THE STANDARD FOR INSANITY AS DEFINED BY THE MISSISSIPPI SUPREME COURT
¶ 18. Mississippi courts utilize the M'Naghten test to determine the sanity of a criminal defendant. Westbrook v. State, 658 So.2d 847, 850 (Miss.1995); Tyler v. State, 618 So.2d 1306, 1309 (Miss.1993). The Mississippi Supreme Court has stated that "the test for insanity is whether the defendant was unable to distinguish right from wrong at the time the act was committed." Roundtree v. State, 568 So.2d 1173, 1181 (Miss.1990). In Westbrook, rejecting the uncontrollable impulse defense, the court reiterated,
Admittedly, the M'Naughton [sic] test of criminal responsibility may not be a perfect means to test sanity of one charge with [sic] crime, but no better solution has been offered. Thus the test in this state remains the ability of the accused to realize and appreciate the nature and quality of his deeds when committed and the ability to distinguish between right and wrong.
Id. at 850 (quoting Edmond v. State, 312 So.2d 702, 704 (Miss.1975)).
¶ 19. Sitton has a long and welldocumented history of mental illness. He has been diagnosed variously as suffering from a bipolar disorder, schizoaffective disorder, bipolar type, as well as paranoid schizophrenia. While Sitton concedes that schizophrenia, in and of itself, does not render one M'Naghten insane, Laney v. State, 486 So.2d 1242, 1244 (Miss.1986), he argues that at the time of the incident, his condition was so serious that even if he vaguely could discern right from wrong, his illness prevented him from appreciating the illegality of his actions. However, determination of the defendant's sanity is within the province of the jury, which may accept or reject expert and lay opinions given at trial. Tyler, 618 So.2d at 1309; Roundtree, 568 So.2d at 1181.
¶ 20. The jury heard testimony both from police officers who were with Sitton at the time of his arrest and from mental health professionals who examined and treated him shortly after his arrest as well those who evaluated him before trial. Dr. Reb McMichael, a psychiatrist who was part of the team which evaluated Sitton at Whitfield when he was admitted in June 1996, diagnosed him as suffering from a bipolar disorder, manic type. He stated that Sitton was severely mentally ill at the time of the incident and that his ability to appreciate the criminality of his acts and conform his conduct with the requirements of the law was impaired, but he knew right from wrong. He further reiterated that, on the basis of the interviews he and his staff had with Sitton over the six week period he was hospitalized, "[i]t is my opinion to a reasonable degree of medical certainty that on February 29, 1996, Mr. Sitton knew that his alleged actshe knew what he was doing; he knew the nature and quality of his alleged acts, and he knew that what he was doing was wrong."
¶ 21. In January of 1998, Dr. Billy Fox, a clinical psychologist, ran a series of eleven standardized psychological tests on Sitton. Based on those tests, he diagnosed Sitton as suffering from paranoid schizophrenia, in partial remission with medication. Based on Dr. Fox's tests and his own one-day neuropsychiatric evaluation of Sitton on January 9, 1998, Dr. Ritter, a specialist in neuropsychiatry, also diagnosed him as suffering from paranoid schizophrenia, in partial remission. He testified that Dr. McMichael, as well as the various institutions where Sitton had been hospitalized *33 over years were all wrong in not arriving at the same diagnosis. He further testified that Sitton's confusion that day as to whether he was in Mississippi or Florida was evidence of confusion and disorientation so profound as to prevent him from discerning right and wrong, stating, "Indeed he committed these violent acts with no thoughts of concealing himself. Right out there in broad daylight. And this alone should make his inability to know right from wrong irrefutable."
¶ 22. "The jury's determination will remain undisturbed unless this Court is convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would sanction an unconscionable injustice." Tyler, 618 So.2d at 1309; Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). While Sitton's assignment of error is less than clear, the gravamen of the issue appears to be whether the jury properly rejected his insanity defense and found him guilty. Sitton does not challenge the correctness of the jury instructions which set forth the M'Naghten standard for determining insanity. Indeed, the jury was presented with ample evidence that Sitton knew the difference between right and wrong on February 29, 1996. Accordingly, we allow that verdict to stand.

CONCLUSIONS
¶ 23. The circuit court did not abuse its discretion in admitting an autopsy photograph of Donna Ware's unborn twins. The picture had probative value in demonstrating that the babies were "quick" and is not such that could be characterized as prejudicial or inflammatory. We further find that the State met its burden in showing that the twins were "quick" as required by Miss.Code Ann. § 97-3-37. Whether Sitton knew right from wrong at the time of the acts committed is a matter for the jury to determine. The jury heard testimony from a variety of experts who had the opportunity to evaluate Sitton, as well as from police officers who were present at the time of his arrest. There is ample evidence in the record to support its finding. Accordingly, we affirm the judgment of the court below.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS; COUNT II, AGGRAVATED ASSAULT OF A POLICE OFFICER AND SENTENCE OF THIRTY YEARS; COUNT III, MANSLAUGHTER AND SENTENCE OF TWENTY YEARS; COUNT IV, MANSLAUGHTER AND SENTENCE OF TWENTY YEARS; COUNT V, MURDER AND SENTENCE OF LIFE, ALL TO BE SERVED CONSECUTIVELY, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR. MOORE, J., NOT PARTICIPATING.