

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00484-CR

WILLIAM S. BROWN                                                      APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 1422674D

----------

## MEMORANDUM OPINION[1]

----------

In a single issue, Appellant William S. Brown appeals his conviction for murder and life sentence.  *See* Tex. Penal Code Ann. § 19.02 (West 2011).  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background

Appellant was convicted by a jury of killing Andre Fobbs during an argument over money. Appellant shot Fobbs three times in the front yard of his best friend's home, after which Fobbs, bleeding profusely, ran inside the home and collapsed.

During the punishment phase, the State offered a video recording from responding Officer Daniel Karna's body camera. The recording depicted Officer Karna's attempts to render first aid to Fobbs, who was lying on his back in a pool of blood with blood spurting from a gunshot wound in his neck. Officer Karna attempted to stop the bleeding with a towel, but it is apparent in the video that Fobbs had already lost a lot of blood—in addition to the pool of blood beneath him, blood can be seen splattered on the floor and walls surrounding Fobbs. Fobbs' gaze was fixed and he was struggling to breathe. Despite Officer Karna's repeated attempts to communicate with Fobbs, Fobbs never responded. After two minutes, paramedics arrived on the scene and Officer Karna explained to a paramedic that it appeared a bullet had traveled through Fobbs' neck and that Fobbs was unresponsive. At that point, the paramedics took over and Officer Karna stepped away from Fobbs, who was still breathing.

Appellant's counsel objected to admission of the video on the basis of "rule 403(b)." The State argued that it should be admitted to show the suffering of the

victim caused by Appellant. The trial court overruled the objection, and the video was admitted and played for the jury.[2]

The jury additionally heard of Appellant's history of domestic violence and criminal history. His former girlfriend testified to his issues with anger and told the jury, "He would beat me like I was a man." She described how he would hit her, bite her, and hold her down so she could not move, and she recounted an instance when he dislocated her jaw. The trial court admitted evidence of Appellant's prior convictions, including three for assault causing bodily injury, two for burglary of a habitation, one for evading arrest, and one for drug possession. *See* Tex. Penal Code Ann. §§ 22.01(a)(1), (b)(2), 30.02(c)(2), (West Supp. 2017), § 38.04 (West 2016); Tex. Health & Safety Code Ann. § 481.121 (West 2017).

After hearing the evidence, the jury sentenced Appellant to life in prison.

## Discussion

In his sole issue on appeal, Appellant argues that the trial court erred by admitting the video recording over his counsel's objection. We disagree.

Although Appellant's counsel objected "under rule 403(b)," the trial court appears to have understood the objection as one under rule 403 (which has no subparts) and ruled that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. *See Resendez v. State*, 306

---

[2]As it appears in the record before us, the recording is 17 minutes long. Only the first 2 minutes and 50 seconds were played for the jury.

S.W.3d 308, 313 (Tex. Crim. App. 2009*)* (noting that a general or imprecise objection is sufficient only if the legal basis for the objection is obvious to the trial court and opposing counsel).

We review a trial court's rulings on evidentiary objections for an abuse of discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). A trial court does not abuse its discretion unless its ruling is arbitrary and unreasonable; the mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Foster v. State*, 180 S.W.3d 248, 250 (Tex. App.—Fort Worth 2005, pet. ref'd) (mem. op.).

During the punishment phase of a non-capital trial, evidence may be offered "as to any matter the court deems relevant to sentencing." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2017). Whether evidence is relevant in the punishment phase is determined by policy rather than a deductive process, and those policies include (1) giving the jury complete information that will allow it to tailor an appropriate sentence for the defendant, (2) the rule of optional completeness, and (3) whether the defendant admits the truth during the sentencing phase. *Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004). The overriding concern, therefore, is whether the evidence is helpful to the jury. *Id.*

4

Even if evidence is helpful to the jury, however, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice—that is, it creates "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999) (discussing Tex. R. Evid. 403 and quoting *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993)). We begin with the presumption that relevant evidence will be more probative than prejudicial. *Young v. State*, 283 S.W.3d 854, 876 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). But in considering whether in a particular circumstance the evidence's prejudicial nature outweighs any probative value it may have, we consider its potential to impress the jury in some irrational but nevertheless indelible way, the time used to develop the evidence, and the proponent's need for the evidence. *See Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

Appellant argues that the probative value of the video was substantially outweighed by its unfairly prejudicial depiction of Fobbs as he lay dying. In so arguing, he analogizes it to the erroneous admission of photographs of deceased fetuses in *Erazo*, 144 S.W.3d at 492, and *Reese v. State*, 33 S.W.3d 238, 239 (Tex. Crim. App. 2000). We disagree and find the video admitted in this case distinguishable from the photographs admitted in *Erazo* and *Reese*. *Erazo* and *Reese* were prosecutions for murders of pregnant women. In each case, the trial court admitted into evidence a photograph depicting the deceased fetus of the

murder victim. *Erazo*, 144 S.W.3d at 488; *Reese*, 33 S.W.3d at 239. In *Erazo*, it was an autopsy photograph of the fetus. 144 S.W.3d at 488. In *Reese*, it was a photograph of the victim's body in her casket with the fetus wrapped in a blanket next to her. 33 S.W.3d at 239. In both cases, the court of criminal appeals held that the trial courts erred by admitting the photographs because any probative value was substantially outweighed by their unfairly prejudicial nature. *Erazo*, 144 S.W.3d at 496; *Reese*, 33 S.W.3d at 244.

In *Erazo*, the court explained that the probative value of the photograph of the victim's deceased fetus was low because it was irrelevant to the facts at issue in the case. 144 S.W.3d at 493. It specifically contrasted the photograph from a "crime-scene photograph, which would assist a jury in visualizing the scene." *Id.* And in distinguishing it from cases from other jurisdictions that have upheld the admission of similar photographs, the court explained that the photos in those cases were helpful to the juries "because they showed wounds suffered by the victim (or victims) for whose death the defendants were on trial or demonstrated elements that the State or plaintiff was required to prove to obtain a conviction or judgment." *Id.* at 493–94 (discussing *Sitton v. State*, 760 So. 2d 28, 31–33 (Miss. Ct. App. 1999) (op. on reh'g) (holding photograph of twin fetuses was admissible in trial for manslaughter of the fetuses), *People v. Heard*, 718 N.E.2d 58, 81 (Ill. 1999) (holding autopsy photograph of fetus inside murder victim's uterus was relevant to aiding the jury in understanding testimony about the victim's wounds), *cert. denied*, 529 U.S. 1004 (2000), *Commonwealth v.*

6

*Lawrence*, 536 N.E.2d 571, 579 (Mass. 1989) (holding photograph of fetus was admissible to show whether the defendant knew adult victim was pregnant and because prosecution was partly for involuntary manslaughter of the fetus), and *Krishnan v. Ramirez*, 42 S.W.3d 205, 219 (Tex. App.—Corpus Christi 2001, pet. denied) (holding, in medical malpractice case, that photograph of stillborn child was relevant to assist in resolving a factual dispute)).

Likewise, in *Reese*, the court of criminal appeals distinguished cases from other jurisdictions wherein photographs of unborn children were permitted in cases in which the children were victims named in the indictments. *Reese*, 33 S.W.3d at 243 (distinguishing *State v. Alfieri*, 724 N.E.2d 477 (Ohio Ct. App. 1998), and *State v. Williamson*, 919 S.W.2d 69 (Tenn. Crim. App. 1995)). The *Reese* decision also noted its holding in *Cantu v. State* that evidence of another victim who was not named in the indictment, including a photograph of the victim from her sixteenth birthday, was unfairly prejudicial to the defendant. *Id.* at 244 (discussing *Cantu v. State*, 939 S.W.2d 627, 636 (Tex. Crim. App. 1997)).

This case is not analogous to *Erazo*, *Reese*, or *Cantu*. Unlike the photographs at issue in those cases, the video admitted in this case depicted the victim of the case—the man whom the jury found Appellant guilty of killing. The video's probative value is found in its depiction of Fobbs' injuries and his suffering. It provided information that assisted the jury in tailoring an appropriate sentence. *See Erazo*, 144 S.W.3d at 491; *see also Gallo v. State*, 239 S.W.3d 757, 763 (Tex. Crim. App. 2007) (holding "gruesome" photographs of child

7

victim's injuries were "highly probative" to show the full extent of her injuries), *cert. denied*, 553 U.S. 1080 (2008); *Torres v. State*, 92 S.W.3d 911, 921 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("Evidence of the victim's physical . . . injury is highly relevant when considering the full magnitude of the crime."). We disagree with Appellant's argument that it is "unclear" whether the video depicts Fobbs' suffering because Fobbs does not appear conscious— regardless of Fobbs' level of consciousness during the video, the jury could have observed the pool of blood beneath him, the blood sprayed on the walls and floor of the room, and his gasping for breath and drawn the conclusion that he had suffered as a result of the gunshot wounds inflicted by Appellant. We therefore hold that the video was not only relevant and held significant probative value, but that it also did not have the tendency to impress the jury in some irrational but nevertheless indelible way warranting its exclusion. This factor weighs in favor of admission of the video.

Only 2 minutes and 49 seconds of the video were shown to the jury, and it was discussed only briefly during three pages of testimony at the punishment phase of trial. The State did not mention the video in its closing argument. This factor weighs in favor of its admission.

Appellant argues that the State did not need the video because the jury heard through other evidence that Fobbs was unarmed, that Appellant shot him three times, and that Fobbs bled to death as a result. Appellant also argues that the video does not "even show with any clarity the wounds he suffered." We

again disagree with Appellant. The video does depict Fobbs' injuries, as well as his suffering.

In evaluating the State's need for the video, we consider whether other evidence was available to establish the same fact of consequence, how strong any such other evidence is, and whether the fact of consequence was related to an issue that was in dispute. *Erazo*, 144 S.W.3d at 495–96. While Officer Karna could have objectively described the scene that was captured by his body camera—and in fact he did during the guilt phase of the trial—the video provides considerably stronger evidence. The extent of Fobbs' injuries was relevant to the jury's consideration of the circumstances of the offense and their determination of an appropriate sentence for the crime. *See Miller-El v. State*, 782 S.W.2d 892, 895–96 (Tex. Crim. App. 1990) ("It seems clear to us that one 'circumstance of the offense' is degree of injury . . . ."). In our view, the trial court would not have abused its discretion in finding that this factor weighed in favor of admitting the video.

The graphic nature of the video is disturbing, as it depicts a human being desperately clinging to life after being dealt a mortal wound. But this alone does not render it inadmissible. As the court of criminal appeals has explained, "if a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury." *Erazo*, 144 S.W.3d at 489 (quoting *Martin v. State*, 475 S.W.2d 265, 267 (Tex.

9

Crim. App.) (op. on reh'g), *cert denied*, 409 U.S. 1021 (1972)).  Based upon the record before us, we do not view the video as having been offered solely to inflame the minds of the jury and do not regard the trial court's admission of the video as an abuse of discretion.  We therefore overrule Appellant's sole issue.

## Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

PANEL:  SUDDERTH, C.J.; GABRIEL and KERR, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 12, 2018

10