IRVING, J.,
for the Court:
¶ 1. Joseph Catchings was charged in a two-count indictment with 1) wilfully, unlawfully, feloniously, purposely and knowingly attempting to run head on into Crystal Springs Police Officer Gary Funchess’s vehicle and stalking the vehicle on the bumper with a deadly weapon, to-wit an automobile at a time when Funchess was acting within the scope of his duty and office as a law enforcement officer of the City of Crystal Springs, Copiah County, Mississippi, and 2) wilfully, unlawfully, fe-loniously, purposely and knowingly attempting to cause bodily harm to Crystal Springs Police Officer Gary Funchess by shooting at Funchess with a deadly weapon, to wit: a handgun. Catchings was tried and convicted on both counts and was sentenced to serve a term of ten years in ■the custody of the Mississippi Department of Corrections on each count with said terms of imprisonment to run concurrently with each other. Aggrieved, Catchings filed this appeal and asserted the following-assignments of error which are taken verbatim from his brief:
THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A VERDICT OF GUILTY IN THAT IT FAILED TO PROVE BEYOND A REASONABLE DOUBT AND TO THE EXCLUSION OF EVERY REASONABLE HYPOTH- . ESIS CONSISTENT WITH INNOCENCE THAT THE APPELLANT WAS GUILTY AND THE APPELLANT SHOULD BE DISCHARGED BECAUSE THE VERDICT OF THE JURY AND IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding no reversible error, we affirm.

Facts

¶ 2. On the night of March 4,1997, Crystal Springs Police Officer Gary Funchess saw an older model Pontiac, known by him to be owned by Oscar Johnson, run a stop sign inside the city limits. Funchess attempted to stop the vehicle by turning oh the patrol car’s flashing blue lights and siren. The driver of the automobile ignored all of Funchess’s attempts to stop him and instead began a high speed flight to avoid being stopped. Funchess pursued. The Pontiac was a convertible model and the top was down.
¶ 3. The pursuit proceeded on Highway 51 in Crystal Springs for some distance when the Pontiac made a right turn on *362 Dees Road. Funchess testified that ■ the convertible spun around on Dees Road and headed directly at his patrol car. Fun-chess said that when he realized that the two vehicles, were on a collision course, he pulled his car as far onto the right shoulder as possible. Nevertheless, the left front bumper and quarter panel of the convertible struck the left front bumper of the patrol car. The convertible sped from the scene and headed back toward Crystal Springs. Funchess continued- the chase and pursued the convertible from one end of Crystal Springs to the other at speeds reaching up to 100 miles per hour. At one point the convertible appeared to overshoot an intended turn and ended up in the parking lot of the Louisiana Candy Company. Thinking that he had an opportunity to stop the vehicle, Funchess stopped his patrol car and stepped out. He testified that he was met with gunfire from the driver’s seat of the convertible. He said that he saw the flash from the muzzle and heard the shot even though he was not able to identify the shooter. Fun-chess drew his own weapon and returned fire sixteen times, emptying the gun’s magazine as the convertible sped away in the direction of the home of its owner, Oscar Johnson.
¶ 4. Funchess got a description of the driver as the car drove past him at close range, radioed the description in to dispatch and called for assistance. The convertible drove into the driveway of the home of the car’s owner, and Funchess saw the lone occupant step from the driver’s side to the passenger side and exit the vehicle by leaping out of the passenger side of the open-topped vehicle. As the car’s occupant fled, Funchess was able to get a better description. He then radioed in the more detailed description that the individual was six feet tall and weighed about 200 pounds and was wearing dark pants and described the shirt again. Fun-chess testified that the fleeing suspect had run in the direction of the back of Johnson’s residence. Funchess testified repeatedly during the trial that he observed only one occupant in the vehicle during the entire pursuit. He also testified that he had known Johnson, the car’s owner, since the two were in third grade together, which would have been a period of about thirty years and that Johnson was not driving the car at the time of the chase.
¶ 5. Funchess’s radio communication was heard by Ricky Lack, an off-duty police officer who had been monitoring the situation on his personal radio. Lack went to the scene of the incident in his private vehicle in an attempt to be of assistance. He saw a man matching the description given by Funchess emerge from the back side of the street on which Johnson lived. Lack apprehended the suspect and testified that the first words out of the suspect’s mouth were, “I was in the car, but I wasn’t the one that shot the gun.” Catchings was arrested and charged with two counts of attempted aggravated assault with a deadly weapon against an officer of the law, one charge for assault with the vehicle and one for the firearm.
¶ 6. Catchings testified in his own defense and admitted being in the convertible but denied that he was driving, claiming instead that Johnson was driving. He also denied that either of them fired a weapon. He also denied uttering the statement attributed to him by Lack. Catchings called four other witnesses in his defense, two of whom claimed to have seen two people in the speeding convertible, and one of those claimed that the second individual was Johnson. The other two witnesses called by Catchings claimed to have not heard any gunshots except those fired by Funchess.
¶ 7. Johnson, the car’s owner, was called in rebuttal by the State and denied either driving or being in the car at the time of the incident. It was his testimony that he lent the automobile to Catchings and was asleep inside his home when he heard the shooting and stepped out of his front door to find his car full of gunshot holes. No *363 weapon was ever recovered, and no gunshot residue analysis was ever performed.
Analysis of Issues Presented

(a) Sufficiency of the evidence

¶ 8. The standard of review for the legal sufficiency of the evidence is well-settled: “[W]e must with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in the light most favorable to the verdict. The credible evidence which is consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Wetz v. State, 503 So.2d 803, 808 (Miss.1987) (citations omitted). Franklin v. State, 676 So.2d 287, 288 (Miss.1996).
. . ¶ 9. Catchings contends that when one considers the evidence presented by the State, one sees that the moral certainty of guilt is lacking. As proof of this assertion, he claims that Officer Funchess lacks credibility because Funchess testified he did not know if a gun was ever found in this case. Catchings argues that it is highly unlikely that the alleged victim, a police officer, would not be informed if a gun used to shoot at him was or was not found.
¶ 10. The Mississippi Supreme Court has ruled that, “[T]he jury is the sole judge of the credibility of witnesses, and the jury’s decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict.” Nicholson v. State, 523 So.2d 68, 70 (Miss.1988) (citation omitted). “Where the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury’s duty to resolve the conflict.” Id. at 71.
¶ 11. Catchings also claims that the fact that only shell casings from Funchess’s gun were found at the crime scene and the fact that no tests for nitrates or gun powder were taken from Catchings are all significant indicators of the lack of moral certainty of guilt. We say that the absence of these things in no way renders the jury verdict invalid. Catchings argued all of this to the trial jury, yet the jury chose to believe what it believed, which, unfortunately for Catchings, was that he was guilty based on the totality of evidence that was available to it. Our examination of the record reveals that the evidence that was presented to the jury was sufficient to support the verdict. This issue has no merit.

(b) Weight of the evidence

¶ 12. On appeal, this Court does not retry the facts, but must take the view of the evidence most favorable to the State and must assume that the fact-finder believed the State’s witnesses and disbelieved any contradictory evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993); Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992). On review, we accept as true all evidence favorable to the State, and the State is given “the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Griffin, 607 So.2d at 1201 (citations omitted). This Court will reverse such a ruling only for an abuse of discretion by the trial judge. McClain, 625 So.2d at 781. We will not order a new trial unless this Court is convinced that “the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice.” Noe v. State, 628 So.2d 1368, 1369 (Miss.1993) (quoting Wetz v. State, 503 So.2d 803, 812 (Miss.1987)).
¶ 13. Catchings contends that the weight of the evidence was contrary to the verdict of the jury and directs this Court’s attention to the testimony of his witnesses who testified to only witnessing and hearing gunfire from Funchess and not from the convertible. We need look no further than Catehings’s own brief, in which ■ he cites the following case authority, to resolve this issue against him. The jury is charged with the responsibility of weighing and considering the conflicting evidence *364 and credibility of the witnesses and determining whose testimony should be believed. McClain, 625 So.2d at 781; Lewis v. State; 580 So.2d 1279 (Miss.1991); Benson v. State, 551 So.2d 188 (Miss.1989). Under the facts herein, the jury’s verdict was clearly not against the overwhelming weight of the evidence, and the trial court did not abuse its discretion in refusing to order a new trial. We find this issue to be without merit
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY OF CONVICTION OF TWO COUNTS OF AGGRAVATED ASSAULT ON A POLICE OFFICER AND SENTENCE TO SERVE TEN YEARS ON EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCES TO RUN CONCURRENTLY AND WITH THE SENTENCING JUDGE RETAINING JURISDICTION OVER THE APPELLANT FOR ONE YEAR UNDER SECTION 47-11-47 OF THE MISSISSIPPI CODE (REV.1993) IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.