ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Lincoln County Circuit Court found Christopher Allen guilty of conspiring to sell amphetamines to a confidential informant (Cl). Allen claims the circuit court erred when it denied his request for a circumstantial-evidence instruction. Additionally, Allen claims there was insufficient evidence to sustain his conspiracy conviction. Finally, Allen argues that his conspiracy conviction is contrary to the overwhelming weight of the evidence. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Allen’s conviction stems from his interaction with a CI[1] who informed law-enforcement officers that he had previously bought Adderall, a prescription medication' that contains amphetamine, from Allen and Allen’s girlfriend, Julie Thornton. Deputy Keith Dickerson of the Lincoln County Sheriffs Department and Officer John Douglas of the Brookha-ven Police Department met the Cl at a *683 pre-buy location. The law-enforcement officers gave the Cl money to buy Adde-rall from Thornton and Allen. The law-enforcement officers also wired the Cl with audio and visual surveillance equipment.
¶ 3. The Cl called Thornton, and they arranged a place to meet. However, they did not specifically mention the purpose of their meeting during that initial phone call. Sometime later, Allen called the Cl. That phone call was not recorded. At trial, the Cl testified that he and Allen clarified the location where they planned to meet-which was on property that Allen’s family owned. Again, they did not specifically mention buying or selling Adderall, although the Cl had previously purchased Adderall from Allen, who had a prescription for Adderall.
¶ 4. When the Cl arrived at the prearranged meeting place, the Cl gave money to Thornton, and Thornton gave the Cl four Adderall pills. Allen was driving the vehicle in which he and Thornton had arrived. However, it was Thornton who actually conducted the exchange. Allen never got out of the vehicle, although he was sitting inside his vehicle, which was mere feet from the exchange between Thornton and the Cl.
¶ 5. The Cl returned to the officers. He gave Deputy Dickerson the Adderall pills. Those pills were later sent to the Mississippi Crime Laboratory, where forensic scientist Alison Conville confirmed that they were actually Adderall pills.
¶ 6. Thornton and Allen were each indicted on one count of the unlawful sale of amphetamine and one count of conspiracy to sell amphetamine. Thornton pled guilty to both charges. Allen opted for trial. At Allen’s trial, Deputy Dickerson testified that Allen had a prescription for Adderall. However, Deputy Dickerson admitted that he never heard Allen discuss transferring pills. Officer Douglas also testified that he never heard any mention of exchanging pills during the phone conversations between the Cl and Thornton or Allen. The Cl testified that he and Allen only discussed where to meet. According to the Cl, he and Allen never specifically mentioned that the Cl would be giving Allen money in exchange for Adderall pills. However, the prosecution introduced the audio and visual recordings that were captured on the equipment that was wired to the Cl. Thornton testified that she did not have a prescription for Adderall. Although Thornton testified that she had received Adderall pills from Allen in the past, she also testified that she could not remember where she got the Adderall pills that she sold to the Cl.
¶ 7. During the conference on jury instructions, Allen requested a circumstantial-evidence instruction. However, the circuit court denied Allen’s request. Ultimately, the jury found Allen not guilty of selling amphetamine. However, the jury found Allen guilty of conspiracy to sell amphetamine. The circuit court sentenced Allen to twelve years in the custody of the Mississippi Department of Corrections, with six years suspended and six years to serve, followed by five years of post-release supervision. Following his unsuccessful post-trial motions for a judgment notwithstanding the verdict (JNOV) or a new trial, Allen appeals. Allen claims the circuit court erred when it denied his request for a circumstantial-evidence instruction. He also claims that there was insufficient evidence to sustain his conspiracy conviction. Finally, Allen claims his conviction is contrary to the overwhelming weight of the evidence.
ANALYSIS
I. CIRCUMSTANTIAL-EVIDENCE INSTRUCTION
¶ 8. Allen claims the circuit court erred when it denied his request for a circum *684 stantial-evidence instruction. According to Allen, he was entitled to a circumstantial-evidence instruction because there was no direct evidence that he and Thornton entered into a conspiracy to sell the Adderall pills.
¶ 9. “Jury instructions generally are within the discretion of the trial court.” Maye v. State, 49 So.3d 1124, 1129 (¶ 7) (Miss.2010). The Mississippi Supreme Court has instructed:
In determining whether error lies in the [giving] or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. There is no error if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law.
Id. Additionally, “a defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Id.
¶ 10. “Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such [a] fact does exist.” McInnis v. State, 61 So.3d 872, 875 (¶ 11) (Miss.2011) (quotations omitted). “A circumstantial-evidence instruction provides that the State must prove the defendant guilty beyond a reasonable doubt and to the exclusion of all reasonable hypotheses consistent with innocence.” Id. at 875-76 (¶ 11). If any evidence qualifies as “direct” evidence, a circuit court may refuse a circumstantial-evidence instruction. Id. at 876 (¶ 13).
¶ 11. One example of direct evidence is a defendant’s confession or admission to a “significant element of the offense.” Id. (quotations omitted). Another example of direct evidence is “eyewitness testimony to the gravamen [2] of the offense charged.” Id. Video evidence may also qualify as direct evidence. Golden v. State, 860 So.2d 820, 823 (¶ 15) (Miss.Ct.App.2003).
¶ 12. For there to be a conspiracy, “there must be recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purpose.” Franklin v. State, 676 So.2d 287, 288 (Miss.1996). “The conspiracy agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators.” Id. “Furthermore, the existence of a conspiracy, and a defendant’s membership in it, may be proved entirely by circumstantial evidence.” Id. In this case, there is circumstantial evidence of Allen’s recognition of a common plan to sell Adderall pills to the Cl. However, there is direct evidence that Allen knowingly intended to further that common purpose.
¶ 13. Allen had a prescription for Adde-rall. The Cl and Deputy Dickerson both testified that Allen told the Cl to meet him and Thornton on property that belonged to Allen’s family. A subsequent conversation between the Cl and Thornton was recorded and played for the jury. During that conversation, the Cl asked Thornton where to meet. Thornton relayed the question to someone who was with her, and a male voice replied. Thornton then *685 described the location to the Cl. Deputy Dickerson testified that he heard Allen call the Cl and ask whether the Cl was close to the arranged meeting location. According to Allen, he and Thornton were close to the arranged meeting location. Surveillance equipment showed the Cl stop close to Allen’s vehicle. The Cl got out of his car while Allen remained in the driver’s seat of his car. Allen was mere feet from Thornton when she and the Cl exchanged Adderall for money.
¶ 14. In Ford v. State, 546 So.2d 686, 689 (Miss.1989), the Mississippi Supreme Court held that a circumstantial-evidence instruction was not warranted when the prosecution in that case had presented direct evidence in the forms of eyewitness testimony that Ford had been present during bank robberies and photographic surveillance images that depicted Ford as he acted as a lookout for a co-conspirator.
¶ 15. In Golden, 860 So.2d at 821 (¶ 2), surveillance videos captured images of a casino cashier as she attached $1.00 bills to bound stacks of $100 bills and later delivered that money to a co-conspirator in an “unorthodox transaction.” That cashier was later convicted of embezzlement and conspiracy. Id. This Court held that the cashier was not entitled to a circumstantial-evidence instruction because the surveillance footage was direct evidence of the cashier’s involvement and the evidence was not “wholly circumstantial.” Id. at 823-24 (¶15).
¶ 16. Through eyewitness testimony and evidence captured by surveillance equipment, there was direct evidence that (1) Allen arranged a meeting location for the illegal exchange and (2) Allen drove Thornton to that location to conduct the illegal exchange. Based on the direct evidence of Allen’s involvement, the circuit court did not err when it denied Allen’s request for a circumstantial-evidence instruction. It follows that there is no merit to this issue.
II. SUFFICIENCY OF THE EVIDENCE
¶ 17. Next, Allen claims there was insufficient evidence to find him guilty of conspiracy to sell Adderall pills. According to Allen, the only evidence that he conspired to sell Adderall pills consisted of the fact that he had a prescription for Adderall, that he briefly discussed the location where he and Thornton were to meet the Cl, and that he drove the vehicle to the place where Thornton sold Adderall pills to the Cl. Allen argues that the circuit court erred when it denied his motion for a JNOV.
¶ 18. As our Mississippi Supreme Court has stated:
[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a JNOV], the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction. ... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.
*686 Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (internal citations and quotations omitted). However, this Court will determine that there was sufficient evidence to sustain the jury’s verdict if the evidence was “of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense.” Id. (internal citations and quotations omitted).
¶ 19. Allen cites King v. State, 580 So.2d 1182, 1188 (Miss.1991), for the principle that one’s “[m]ere presence at the scene of the crime, even when coupled with knowledge that a crime is being committed, is insufficient to establish membership in a conspiracy.” Allen also notes that one’s “mere association with conspirators is similarly insufficient.” Id. (citation omitted). Similarly, merely accompanying someone or leading someone to a drug deal is insufficient to prove conspiracy. See Johnson v. State, 642 So.2d 924, 928 (Miss.1994). However, Allen was not merely present at the crime scene. Nor did Allen merely accompany Thornton. Allen chose the scene of the crime when he decided that the Cl should meet him and Thornton on property that Allen’s family owned. Allen drove Thornton to that location. Allen also called the Cl to ensure that the Cl was going to successfully arrive at the location that Allen had chosen. Although there was circumstantial evidence of Allen’s agreement to enter a common plan to sell Adderall to the Cl, such an agreement “need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators.” Ford, 546 So.2d at 688 (citation omitted). Based on the foregoing discussion, we find no merit to this issue.
III. WEIGHT OF THE EVIDENCE
¶ 20. Finally, Allen claims his conspiracy conviction is contrary to the overwhelming weight of the evidence. We are mindful that as we review the circuit court’s decision to deny a motion for a new trial, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). The supreme court has further instructed that when reviewing a circuit court’s decision to deny a motion for a new trial:
The motion ... is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, ... the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
Id. (footnote and internal citations and quotations omitted).
¶ 21. Viewing the evidence in the light most favorable to the verdict, we find that it would not sanction an unconscionable injustice to allow Allen’s conspiracy conviction to stand. Accordingly, we will not disturb the jury’s verdict. We find no merit to this issue.
*687 ¶ 22. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF CONSPIRACY TO SELL AMPHETAMINE AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SIX YEARS SUSPENDED AND SIX YEARS TO SERVE FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Although the Cl's name appears in the record, to protect his anonymity, we have omitted it from this opinion.

. “The term ‘gravamen’ is defined as the ‘substantial point or essence of a claim, grievance. or complaint.'” McInnis, 61 So.3d at 876 (¶ 13) (citation omitted).