# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00259-COA

JOSHUA EDRICK EDWARDS A/K/A JOSHUA          APPELLANT
EDWARDS A/K/A JOSHUA E. EDWARDS

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2020 |
| TRIAL JUDGE: | HON. JOHN H. EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/19/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McCARTY AND SMITH, JJ.

### BARNES, C.J., FOR THE COURT:

¶1. Joshua Edwards was indicted with co-defendants Jermaine McClure and Bobby Joe Phillips for armed robbery (Count I) and conspiracy to commit armed robbery (Count II) of a GameStop store in Ridgeland, Mississippi. McClure and Phillips pleaded guilty to the crimes charged, while Edwards proceeded to trial. McClure and Phillips both testified for the State. After a jury found Edwards guilty of the two counts, the trial court sentenced him to thirty years for the armed robbery conviction and five years for the conspiracy conviction, to be served concurrently in the custody of the Mississippi Department of Corrections.

¶2. Edwards now appeals his convictions and sentences, arguing the evidence was

insufficient to convict him of conspiracy to commit armed robbery (Count II), and the weight of the evidence was inadequate for convicting him of armed robbery as well as conspiracy to commit armed robbery (Counts I and II). Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. On June 17, 2019, Edwards picked up McClure in southwest Jackson in a blue-green van so they could "go make some money." McClure knew Edwards meant this would be an illegal venture. McClure had known Edwards for several months from the neighborhood where McClure was homeless. That afternoon, Edwards drove McClure to the GameStop in Clinton, Mississippi. McClure testified that Edwards told him to get him a gaming system. McClure decided to get one for himself as well.

¶4. The Clinton store manager testified about what transpired inside the Clinton store, and it was also captured on the store's security videos. A blue-green van with two men inside pulled up to the storefront. A man, later identified as McClure, entered the store and asked the manager to see PlayStation 3 consoles. The manager went to the back of the store to obtain the merchandise while McClure milled around the store. The manager returned with two PlayStations valued at approximately $140 each. As McClure attempted to purchase the merchandise, the driver of the van, later identified as Edwards, entered the store. The manager overheard Edwards tell McClure, "You need to hurry up; we need to go," before Edwards returned to the van. McClure admitted at trial that he was going to pay for the merchandise illegally using a credit card that he had "found." When McClure could not find the credit card on his person, he left the store without making any purchases.

2

¶5.     Edwards and McClure then traveled to downtown Jackson and ran into Phillips at the Greyhound bus station. Phillips, who was homeless, had known Edwards and McClure for about two years. Phillips testified that Edwards told him to get in the van because "we're going to work." McClure testified that he heard Edwards tell Phillips that since he owed Edwards money, Phillips needed to go in the store and get some games . . . [and m]ight as well get the money too." Phillips testified that after leaving the bus station, Edwards gave him a handgun; however, McClure did not witness this transaction. Edwards drove Phillips and McClure to the GameStop in Ridgeland, Mississippi, and parked the van in a nearby lot. Phillips testified that Edwards told him if he "didn't get out and do it that [Edwards] was gone kill [him]." Edwards waited in the van while Phillips and McClure went inside the store.

¶6.     The store clerk testified that once inside, Phillips and McClure were walking around the store and put several hundred dollars' worth of "random stuff" on the counter to purchase, including video games, gaming controllers, a t-shirt, a hat, socks, and the same two gaming systems McClure had tried to purchase in Clinton. As the clerk rang up the items, Phillips displayed a handgun and said, "[G]ive me all the money." Frightened, the clerk complied and opened the register. Phillips grabbed all the cash and left with McClure, who had the stolen merchandise. Security video footage of the robbery was entered into evidence showing the armed robbery. McClure testified they jumped into the van with Edwards driving and "sped off." Phillips gave Edwards the cash and returned the gun. Phillips and McClure testified Edwards gave them some of the money and kept the rest. The

3

van then had a blowout on the way back to Jackson, and the men abandoned the vehicle.

¶7.     After Phillips and McClure left the Ridgeland store, the clerk called the police. Officers promptly arrived and viewed the security camera recordings. The police identified two white male suspects from the recordings and posted photographs of them on social media. The Ridgeland clerk sent nearby GameStop stores the photographs of the two robbery suspects. The manager of the Clinton GameStop reviewed its security footage and saw that one of the men—later identified as McClure—had been at the store about two hours earlier with a black male (later identified as Edwards). Police subsequently began searching for a third suspect.

¶8.     The next day, the Ridgeland Police Department discovered the van had been recovered earlier—abandoned on Highland Colony Parkway in Ridgeland. Several items linked to the robbery were found inside the van: hats that Phillips and McClure had worn during the robbery as shown in the security footage, as well as an X-Box t-shirt with the price tag still on it.

¶9.     Phillips turned himself in to the police the day after the robbery, giving a full confession and implicated Edwards as being involved in both stores' incidents with McClure. Also, McClure was identified by a tip to CrimeStoppers. Through a pawnshop database, detectives discovered McClure had pawned a video game and gaming accessories in Jackson the day after the robbery, which were identified as merchandise stolen during the armed robbery. McClure was located and arrested about five days after the robbery. McClure confessed to committing the armed robbery with Phillips at the GameStop in

Ridgeland.[1]  Detective Adrian Ready interviewed McClure, who also "implicated Joshua Edwards as being involved in it with him." McClure told Detective Ready that Edwards was the driver in the Ridgeland robbery and was also with him at the GameStop in Clinton. Detective Ready further testified that even though Edwards was not present on the Ridgeland GameStop's security video, due to the close time frame of the attempted robbery in Clinton, he was a likely suspect in both stores' crimes.

¶10.    At trial, Phillips and McClure testified about the circumstances of the Ridgeland robbery and Edwards's involvement.  Both co-defendants corroborated each other's testimony and their confessions, which were made five days apart.  McClure testified that when he and Edwards ran into Phillips at the bus station, Edwards told Phillips to get in the van because Phillips owed Edwards money, and Edwards had a way for him to pay it back—"we'll go to GameStop and get some games."  Both witnesses identified Edwards from the Clinton GameStop's security camera recordings, identified the van used in the robbery, and testified that Edwards was the driver.  Both witnesses also suffer from mental illnesses, including paranoid schizophrenia.  Phillips testified that he was taking his prescribed medications on the day of the robbery but was also smoking crystal methamphetamine.  McClure was not taking his medications the day of the robbery and was hearing voices.  Additionally, both witnesses had several prior felonies.

¶11.    Both stores' security camera recordings were entered into evidence and corroborated

---

[1] During cross-examination, McClure acknowledged that he testified during his guilty plea hearing that he had planned to pay for the Ridgeland items with a credit card, but Phillips pulled out a gun instead.  At trial, McClure testified he never saw Edwards give Phillips the handgun, but he did see Phillips return the gun to Edwards.

Phillips's and McClure's testimony. In the Clinton store's footage, Edwards can be seen driving a blue-green van and parking it at the storefront. McClure then exits the van and walks into the store. Shortly thereafter, Edwards exits the driver's side of the van and enters the store. Edwards then exits the store and pulls the van up to the front door to pick up McClure as he walks out of the store. In the video, it looks like McClure is telling the van's driver "no" as he's walking out of the store, shaking his head as if to indicate he did not obtain any merchandise.

¶12. The Ridgeland store's security camera footage captured the entire armed robbery. The video showed Phillips and McClure taking to the counter what the cashier estimated as $500 to $600 worth of merchandise. As the clerk rang up the merchandise, Phillips is seen raising a gun and pointing it at the clerk, who removes the money tray from the cash register. Phillips then grabs the money and exits the store with McClure, who is carrying the merchandise.

## ANALYSIS

¶13. Edward argues the evidence was insufficient for convicting him of Count II's conspiracy to commit armed robbery. He also contends the weight of the evidence was inadequate for convicting him of both Count I's armed robbery and Count II's conspiracy charge. We disagree and shall discuss each issue in turn.

### I. Sufficiency of the Evidence for Conspiracy to Commit Armed Robbery

¶14. The relevant question in determining whether the evidence was sufficient to support the verdict is whether "any rational trier of fact could have found the essential elements of

6

the crime beyond a reasonable doubt." *Hughes v. State*, 983 So. 2d 270, 276 (¶10) (Miss. 2008) (quoting *Brown v. State*, 965 So. 2d 1023, 1030 (¶26) (Miss. 2007)). The appellate court reviews the evidence in the light most favorable to the State. *Henderson v. State*, 323 So. 3d 1020, 1026 (¶19) (Miss. 2021) (citing *Martin v. State*, 214 So. 3d 217, 222 (¶12) (Miss. 2017)). "The State receives the benefit of all favorable inferences reasonably drawn from the evidence." *Id.* (citing *Hughes*, 983 So. 2d at 276 (¶11)).

¶15.    Conspiracy to commit armed robbery occurs when two or more persons agree to commit armed robbery. *Cowart v. State*, 178 So. 3d 651, 666 (¶42) (Miss. 2015) (citing Miss. Code Ann. § 97-1-1(a) (Rev. 2014)). In Mississippi, no proof "of an overt act in furtherance of the agreement to establish a conspiracy" is necessary; "the agreement itself is a completed criminal offense." *Henderson*, 323 So. 3d at 1024 (¶8) (citing *Peoples v. State*, 501 So. 2d 424, 428 (Miss. 1987)). Further, "the agreement giving rise to a conspiracy need not be formal or express." *Id.* (citing *McCray v. State*, 486 So. 2d 1247, 1251 (Miss. 1986)). "No magic words, handshakes, winks, nods, spoken agreements, or acknowledgments are necessary." *Id.* "[A]n agreement can be inferred from the surrounding circumstances, such as the 'declarations, acts[,] and conduct of the alleged conspirators.'" *Story v. State*, 296 So. 3d 104, 115 (¶33) (Miss. Ct. App. 2019) (quoting *Graham v. State*, 120 So. 3d 382, 387 (¶19) (Miss. 2013)).

¶16.    Edwards argues that there was no agreement between him and McClure or Phillips to commit armed robbery of the Ridgeland GameStop; there was an agreement between Edwards and McClure only to commit credit card fraud at the Clinton GameStop. Further,

7

Edwards claims his conviction for conspiracy hinged entirely on Phillips's testimony, including Phillips's assertion of duress, indicating there was no agreement between Phillips and Edwards to commit armed robbery.

¶17.    Edwards cites *Franklin v. State*, 676 So. 2d 287 (Miss. 1996), in support of his argument.  In *Franklin*, the Mississippi Supreme Court reversed two juvenile defendants' convictions for conspiracy to commit murder based upon insufficient evidence of conspiracy.  *Id.* at 289.  The two defendants and three other teenagers decided to "mess with" a homeless man.  *Id.* at 288.  All five teenagers threw rocks at the victim and kicked him.  *Id.*  However, one of the other teenagers left the group, returned minutes later with a gun, and shot the victim.  *Id.*  *Franklin* stated, "By its very nature, conspiracy is a joint or group offense requiring a concert of free will. . . . [It] requires the 'union of the minds' of the conspirators."  *Id.* (quoting *Flanagan v. State*, 605 So. 2d 753, 757 (Miss. 1992)).  The supreme court found that the only evidence of conspiracy for the two defendants was they "went with the other boys to 'mess with' the victim."  *Id.* at 289.  However, there was no evidence that by "messing with" the victim, either defendant entered into a common plan to commit murder or that there was a "union of the minds" between the teenager who actually pulled the trigger and the appellants.  *Id.*

¶18.    Edwards argues that according to Phillips's testimony, there was no "concert of free will" or "union of the minds"  because Phillips testified that Edwards threatened to kill him if he did not rob the GameStop in Ridgeland.  Therefore, Edwards claims there is insufficient evidence to prove an agreement between Edwards and Phillips to commit armed

8

robbery, as Edwards threatened Phillips instead. We are not persuaded by this argument.

¶19.    There was sufficient evidence to prove beyond a reasonable doubt that Phillips was not under duress and that he and Edwards agreed to commit armed robbery. Phillips testified that Edwards gave him the handgun used in the robbery and told him to get the money from the store. After the robbery, Edwards sped away from the store as soon as Phillips and McClure entered the van, showing Edwards expected a crime to occur and acted as the getaway driver for his part in the crime. Moreover, Edwards, Phillips, and McClure all shared the proceeds from their crime. A reasonable jury could infer from the surrounding circumstances that there was a mutual agreement to commit armed robbery among Edwards, Phillips, and McClure.

¶20.    Further, Phillips himself never claimed he was acting under duress. He testified that he pleaded guilty to the crimes of armed robbery and conspiracy to commit armed robbery, but he did not mention the defense of duress. McClure did not testify that Phillips was under duress to rob the store either. Confusingly, Edwards contradicts his own argument later in his brief while discussing the weight of the evidence by stating, "Phillips's claim of duress is ludicrous."[2] At the time of the alleged threat, Phillips was armed with a handgun which Edwards had given him, making duress by Edwards unlikely. No evidence was presented that Edwards was armed as well. Viewed in the light most favorable to the State, a reasonable jury could find the elements of conspiracy were proved beyond a reasonable doubt.

_____

        [2] In the second issue, Edwards attempts to discount the credibility of Phillips's testimony about Edwards's involvement in the armed robbery.

9

## II. Weight of the Evidence for Both Counts

¶21.    A motion for a new trial challenges the weight of the evidence and carries a lower standard of review than a challenge to the sufficiency of the evidence. *Cowart*, 178 So. 3d at 668 (¶48) (citing *Ginn v. State*, 860 So. 2d 675, 685 (¶31) (Miss. 2003)). The trial court's denial of a motion for a new trial is reviewed for an abuse of discretion. *Id.* The appellate court will not order a new trial unless "the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Id.* The evidence is weighed in "the light most favorable to the verdict." *Henderson*, 323 So. 3d at 1028 (¶27) (quoting *Williams v. State*, 285 So. 3d 156, 160 (¶15) (Miss. 2019)). "The jury is the sole judge of the weight and worth of evidence and witness credibility." *Id.*

¶22.    Edwards argues that his convictions for armed robbery and conspiracy to commit armed robbery are contrary to the weight of the evidence. Again, he argues his convictions were based entirely on Phillips's testimony,[3] which Edwards argues was unreliable and contradictory. On the day of the robbery, Edwards contends Phillips was a "meth smoking paranoid schizophrenic" who was delusional when he committed the armed robbery, surrendered to the police, and later implicated Edwards in his confession. Further, Edwards claims, contrary to his first argument, that both Phillips's and McClure's testimony showed Phillips was not under duress to commit the armed robbery.

¶23.    "The general rule in Mississippi is that the uncorroborated testimony of an

---

[3] Edwards argues that McClure's testimony does not implicate Edwards in either conviction: Edwards and McClure merely planned to commit credit card fraud at the Ridgeland GameStop, but Phillips unilaterally preempted McClure by pulling out a gun and robbing the store.

accomplice or a co-conspirator may be sufficient to sustain a conviction." *Payton v. State*, 897 So. 2d 921, 936 (¶38) (Miss. 2003). However, this rule "is inapplicable in those cases where the testimony is unreasonable, self-contradictory, or substantially impeached." *Id.* (citing *Flanagan*, 605 So. 2d at 758). Yet "[w]here there is slight corroborative evidence, the accomplice's testimony is sufficient to sustain the verdict." *Id.* at 937 (¶42) (citing *Brown v. State*, 682 So. 2d 340, 345 (Miss. 1996)).

¶24.    Phillips's testimony was not so incredible that the jury could not accept it as truthful. On the day of the crimes, Phillips had taken his medication, and there was no evidence Phillips was "delusional." Both Phillips and McClure testified that Edwards picked up Phillips in the van, drove to the Ridgeland GameStop, and told them to obtain money and games inside the store. Both witnesses' statements were consistent with their statements after the arrest, and both witnesses implicated Edwards in their confessions. McClure did not contradict Phillips's testimony about being given a handgun—McClure just did not witness the exchange before the robbery. McClure also testified Phillips did not bring his own gun, and he saw Phillips return the gun to Edwards, implying Phillips obtained the gun from Edwards. The video footage also corroborates Phillips's testimony. Nothing in the record suggests Phillips would benefit from minimizing his culpability as Edwards suggests. Both Phillips and McClure pleaded guilty and were sentenced prior to Edwards's trial. Further, any conflict in the evidence or credibility issues is the province of the jury to determine. Finally, Edwards's convictions did not hinge entirely on Phillips's testimony, but also on the testimony of McClure, Detective Ready, the store clerk, as well as the

security video. Allowing Edwards's guilty verdicts to stand does not sanction an unconscionable injustice.

¶25. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**