984 So.2d 989 (2007)
Latina WILLIAMS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01939-COA.
Court of Appeals of Mississippi.
May 29, 2007.
Rehearing Denied October 23, 2007.
*990 Lisa M. Ross, Jackson, George J. Parnham, attorneys for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. On June 17, 2005, Latina Williams was found guilty of conspiracy to possess marijuana with intent to sell more than five kilograms of marijuana and guilty of possession of more than five kilograms of marijuana. On appeal, Williams argues that there was insufficient evidence to support her convictions. We find no error and affirm.

FACTS
¶ 2. Early in the morning of November 11, 2001, Madison County Deputy Sheriff Robert Sanders was patrolling Interstate 55. He spotted a Ford Explorer and Dodge Intrepid traveling northbound on I-55. He saw the Ford Explorer weave across the center line and back across the fog line. He also saw the Dodge Intrepid traveling extremely close to the Ford Explorer.
¶ 3. Deputy Sanders considered these to be traffic violations, and he decided to stop both vehicles. At this point, the Dodge Intrepid decreased its speed in a way that prevented a simultaneous stop of both vehicles. When Deputy Sanders pulled close to the Ford Explorer, the Dodge Intrepid then increased its speed in a way that blocked access to any space behind the Ford Explorer. Deputy Sanders then radioed for assistance, which was provided by Deputy Joey Butler.
¶ 4. Deputy Sanders stopped the Dodge Intrepid, and Deputy Butler stopped the Ford Explorer further up the Interstate. When Deputy Sanders approached the Dodge Intrepid, he smelled the odor of marijuana and, upon shining his flashlight in the vehicle, spotted some marijuana residue on the seats. Deputy Sanders learned that Williams was driving and her boyfriend, S.L. Collins, was the passenger. The vehicle was actually a rental car, rented in Collins's name. Also, Deputy Sanders discovered that Williams and Collins were coming from Houston, Texas. Deputy Butler learned that the driver of the Ford Explorer was also coming from Houston.
¶ 5. Deputy Sanders began to search the Dodge Intrepid and found 36.2 grams of marijuana wrapped in a paper towel inside a shoe in the trunk of the vehicle. It appeared as if the marijuana was torn off a larger compressed brick of marijuana. After he completed his search, Deputy Sanders escorted Williams and Collins to the location where Deputy Butler had stopped the Ford Explorer.
¶ 6. There, Deputy Butler had identified the driver of the Ford Explorer as Kahari Nash. He had also found several large bundles of compressed marijuana totaling more than twenty-five pounds in the back of the Ford Explorer. The deputies then *991 escorted Williams, Collins, and Nash, to the sheriff's department.
¶ 7. When questioned, Nash and Williams denied traveling together and denied that they even knew each other. Once at the sheriff's department, the deputies discovered a cell phone in the Dodge that contained, in its previously dialed memory, a number that matched the pager number on Nash's business card. Later, it was admitted that Nash was Collins' cousin.
¶ 8. Williams, along with Collins and Nash, were indicted for conspiracy to possess with intent to transfer, sell, or distribute more than five kilograms of marijuana and possession of more than five kilograms of marijuana.
¶ 9. At trial, Deputy Sanders' testimony was consistent with the previously stated facts. Williams testified in her own defense that she was never asked whether she knew Nash. She also testified that she told Deputy Sanders that she knew Nash, just not very well.
¶ 10. At the conclusion of the evidence, the jury found Williams guilty of both charges of the indictment. The trial court sentenced Williams to a twenty year imprisonment sentence on the conspiracy charge and thirty years imprisonment with twenty-five years to serve on the possession with intent to sell charge. Each sentence was to run concurrently.
¶ 11. Williams filed a motion for judgment notwithstanding the verdict of the jury or, in the alternative, a new trial, which the trial court denied.

ANALYSIS
¶ 12. Williams argues that there was insufficient evidence to support a guilty verdict of conspiracy to possess marijuana with intent to transfer, sell, or distribute. Williams also alleges that since there was insufficient evidence on the conspiracy charge, the necessary nexus between Williams and the possession charge was missing, and therefore, the possession charge must fail.
¶ 13. To evaluate whether the evidence given is sufficient, this Court must determine if any evidence may "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)) (emphasis added). If reasonable jurors could have reached different conclusions with respect to every element of the offense, the evidence will be considered sufficient. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss. 2005) (citing Edwards, 469 So.2d at 70). The prosecution receives the benefit of all "favorable inferences that may be reasonably drawn from the evidence" when determining if the evidence presented was sufficient to support the verdict. Smith v. State, 839 So.2d 489, 495(¶ 12) (Miss.2003).
¶ 14. A conspiracy occurs when two or more persons conspire to commit a crime. Miss.Code Ann. § 97-1-1(a) (Rev.2006). This crime has further been explained by our case law. The supreme court has stated that:
For there to be a conspiracy, "there must be recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purpose." The conspiracy agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators. Furthermore, the existence of a conspiracy, and a defendant's membership in it, may be proved entirely by circumstantial evidence.
*992 Franklin v. State, 676 So.2d 287, 288 (Miss.1996) (quoting Nixon v. State, 533 So.2d 1078, 1092 (Miss.1987)). Therefore, we examine whether the State presented sufficient evidence to prove that Williams and Nash had entered into a common plan to possess marijuana when they were apprehended by the Madison County Sheriff's Department.
¶ 15. Williams cites McCray v. State, 486 So.2d 1247 (Miss.1986), to support its proposition that there was insufficient evidence to find Williams guilty of conspiracy to possess marijuana. McCray was convicted of conspiring to sell, barter, transfer, and distribute marijuana. Id. at 1251. The supreme court found that there was insufficient evidence to support the jury's verdict and reversed the conviction. Id. at 1252. The facts of the case were summarized as follows:
(1) appellant and Jerry Lee flew together to Miami-Ft. Lauderdale using one-way tickets, (2) Bernard Lucas joined them later using a one-way ticket, (3) the three returned from Florida, with Lucas and Lee using false names, (4) all three pieces of the luggage had marijuana residue, (5) the appellant and Lucas had large sums of cash on their persons, and (6) the parties told somewhat contradicting stories regarding their activities in Florida[.]
Id. at 1251. The supreme court also noted that the conspiracy charge was "more or less conjured up after there was no evidence found to support any other conviction." Id. at 1252. The court found that the only thing that the presented evidence might have proven was a plan or attempt to "possess a small amount of marijuana" and not a conspiracy to sell, barter, transfer, and distribute marijuana. Id.
¶ 16. McCray differs from this case. Here, the deputies found much more than just marijuana residue in each vehicle. Indeed, they found more than twenty-five pounds of marijuana in the back of the Ford Explorer driven by Nash. This evidence clearly supported a charge of possession of marijuana of more than five kilograms of marijuana against Nash. Further, the mere amount of marijuana found supported a charge of possession with intent to transfer, sell or distribute more than five kilograms of marijuana.
¶ 17. The only question for this Court to answer is whether there was sufficient evidence presented at trial that Williams and Nash had entered into a common plan and knowingly intended to further its purpose. Several specific facts support the jury's verdict of guilty as to the conspiracy charge. The first fact occurred when Deputy Sanders attempted to pull behind the Ford Explorer to pull it over, and Williams increased her speed, blocking Deputy Sanders's attempt. The first set of facts occurred prior to Deputy Sanders pulling over Williams. Deputy Sanders first noticed the Dodge driven by Williams following too closely to the Ford driven by Nash. Deputy Sanders left his spot of observation and attempted a traffic stop on both the Ford and the Dodge. As he approached the vehicles without his blue lights activated, the Dodge dropped back away from the Ford. After radioing for assistance to effect a traffic stop on both vehicles since a simultaneous stop was no longer possible, Deputy Sanders approached the Ford in the left-hand lane. At trial, when Deputy Sanders was asked what happened next, the following discussion occurred:
Q. Described what happened after that?
A. Whenever I pulled behind the Ford Explorer because, as I stated earlier, I was in the left-hand lane, all of a sudden the Dodge Intrepid came speeding back up past me and *993 pulled in between myself and the Ford Explorer.
Q. How close was your vehicle to the Intrepid?
A. Whenever it pulled in, extremely close. I mean I had to apply my brakes. And it pulled in between myself and the Ford Explorer.
Second, the vehicle Williams was driving contained an amount of marijuana that was still in its compressed form like it had been torn off a brick similar to the ones found in the Ford Explorer. Third, Williams originally denied that she even knew Nash, which she later recanted by stating at trial that she did not know him very well. Fourth, the cell phone found in the vehicle that Williams was driving, which she admitted to using, had the number of Nash's pager stored in its recently dialed memory. Finally, both Nash and Williams were driving North on I-55 from Houston, Texas.
¶ 18. This evidence supports the jury's verdict of guilty of conspiracy to possess with intent to transfer, sell or distribute more than five kilograms of marijuana. A reasonable inference that can be drawn from the evidence presented above was that Williams, Collins, and Nash were traveling together along I-55 with a common plan to move twenty-five pounds of marijuana to later transfer, sell or distribute it. It also would be a permissible inference that Williams attempted to draw Deputy Sanders's attention away from Nash's vehicle, since he was the one carrying the bulk of the marijuana. Williams tried to accomplish this by slowing down and speeding up right in front of Deputy Sanders, in effect blocking Deputy Sanders from pulling in behind the Ford. Unlike the prosecution in McCray, the State provided sufficient evidence to support the underlying crime of conspiracy. Further, the evidence presented by the State was sufficient to prove a conspiracy between Nash and Williams. While there may not be any direct evidence of an agreement, a conspiracy "can be proved entirely by circumstantial evidence." Franklin, 676 So.2d at 288 (quoting Nixon, 533 So.2d at 1092). That is exactly what the State has done in this case.
¶ 19. Holding that there was sufficient evidence to support the conviction on the conspiracy charge, the "necessary nexus" exists to link Williams to the possession of the marijuana bricks found in Nash's vehicle. This nexus is derived from the principle that "[t]he act of any conspirator [Nash] is the act of all of the conspirators." Holmes v. State, 798 So.2d 533, 538(¶ 19) (Miss.2001) (citing Norman v. State, 381 So.2d 1024, 1029 (Miss.1980)). Nash's possession of the more than five kilograms of marijuana was linked to Williams. Therefore, there was sufficient evidence to support the jury's verdict of guilty of possession of more than five kilograms of marijuana.
¶ 20. We find no error and affirm.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF COUNT I: CONSPIRACY TO POSSESS MORE THAN FIVE KILOGRAMS OF MARIJUANA WITH INTENT TO DISTRIBUTE AND COUNT II: POSSESSION OF MORE THAN FIVE KILOGRAMS OF MARIJUANA, AND SENTENCE TO SERVE A TERM OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR COUNT I AND THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR COUNT II, WITH TWENTY FIVE (25) YEARS TO SERVE AND FIVE (5) YEARS SUSPENDED, WITH THE SENTENCES OF COUNT I AND *994 COUNT II TO RUN CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, PJJ., CHANDLER, BARNES, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND ISHEE, J.
IRVING, J., Dissenting.
¶ 22. Because I believe that the evidence is insufficient to sustain Williams's conviction, I respectfully dissent. I would reverse and render Williams's convictions on both counts.
¶ 23. The majority contends that the following evidence is sufficient to support Williams's convictions for conspiracy to possess more than five (5) kilograms of marihuana[1] with intent to distribute, and for possession of more than five (5) kilograms of marihuana:
1. Williams attempted to prevent Deputy Sanders from pulling Nash over.
2. The marihuana in Williams's vehicle looked as though it had been pulled off the brick of marihuana in Nash's vehicle.
3. Williams denied that she knew Nash, but later recanted at trial.
4. The cell phone in the car had Nash's number in its memory.
5. Nash and Williams were both driving from Houston on I-55.
However, the majority opinion omits facts which severely limit the efficacy and usefulness of this evidence. I will elaborate.
¶ 24. First, the rental car that Williams was driving was rented by S.L. Collins, not Williams. There is no evidence that this car was rented by Collins for Williams's use. Second, only approximately one point three (1.3) ounces of marihuana was found in the car that Williams was driving, and it was found in the trunk of the car in Collins' shoe. The twenty-five pounds of marihuana was found in two suitcases in Nash's car. No amount was found in Williams's possessions, and the officers did not deny that the marihuana was found among Collins's possessions rather than Williams's. In fact, Deputy Sanders admitted that the shoe was a male's shoe, not a female's. Third, Williams testified that the cell phone in question belonged to Collins. When asked about this, Deputy Sanders admitted that he could not contradict Williams's statement in this regard, as nothing had been done to ascertain who the phone belonged to. As to the last piece of evidence, it is not clear to me how simply driving on the same highway from the same location is evidence of conspiracy to possess and distribute marihuana. Beyond that, however, Williams provided an uncontradicted explanation of why she was driving from Houston. According to Williams, she was from California and had flown to Houston for a business meeting on behalf of a close friend. She agreed to accompany Collins to Saint Louis afterward, where Collins had family that he was going to see for Thanksgiving. The two of them were then going to fly to California from Saint Louis. In other words, Williams had a valid reason to be traveling from Houston on I-55 north with Collins. There is nothing strange or unusual about this since Collins was Williams's boyfriend. No evidence was presented to indicate that the marihuana was supposed to be sold in Saint Louis, or that Williams was lying when she testified that Collins had family in Saint Louis.
¶ 25. As to the other evidence utilized by the majority to reach its result, I note *995 only that Williams's version of what happened on I-55 contrasted sharply with Deputy Sanders's version. Although the jury was entitled to believe whomever it found more credible, even Deputy Sanders's version of Williams's driving pattern would, in my opinion, be equally consistent with the driving pattern of a driver traveling with the vehicle in front of him. I find it notable that all of Williams's driving behavior which Deputy Sanders found so suspect and incriminating was done before he turned on his blue lights. As soon as he activated his lights, Williams pulled over. It seems reasonable to me that until the lights were activated, Williams had no reason to know that Deputy Sanders was attempting to pull her or Nash over.
¶ 26. As to Williams's denial at the scene that she knew Nash, I would not characterize Williams's testimony at trial as a recantation, as the majority does. At trial, Williams claimed that she never told the officers that she did not know Nash, but testified that she had told them only that she did not know him well and had only recently met him. Williams never admitted to stating that she did not know Nash; therefore, her story was simply different from Deputy Sanders's. I again recognize that the jury was entitled to believe whomever it found more convincing, but given the lack of other substantial evidence presented by the State, I cannot find that Deputy Sanders's testimony is sufficient to sustain Williams's convictions.
¶ 27. Testimony at trial also revealed that Deputy Sanders and the other officers not only allowed, but actually instructed Williams to drive from the scene of her stop to the scene of Nash's stop some distance away, and from there to the police station. It seems odd to me that the officers could believe that Williams was engaged in a conspiracy to possess a large amount of marihuana and then distribute it, but that they then would also let her drive from the scene.
¶ 28. There is a significant lack of compelling evidence to support Williams's guilt in this case. The business card with Nash's name written on it was, according to Deputy Sanders, found in Nash's possession, not Williams's. Notably absent is any evidence that Nash and Williams had ever conversed about the drugs, or that Williams had ever spoken to anyone about the drugs. Deputy Sanders testified that he did not even ask Williams whether she was in possession of any marihuana that night. How can there be a conspiracy when there is no evidence of an agreement by the conspirators to commit some crime? The evidence in this case was such that the jury's verdict could only have been based on assumptions and pure speculation, rather than facts or reasonable inferences drawn from the facts, such as they were. Therefore, I believe that the evidence is insufficient to sustain Williams's conspiracy conviction. Guilt by association is not acceptable in our system of jurisprudence.
¶ 29. Because I find the evidence insufficient to sustain Williams's conspiracy conviction, I also find the evidence insufficient to support Williams's possession conviction. It is baffling to me how Williams can be held accountable for possession of twenty-five pounds of drugs when, in fact, there is no evidence whatsoever that she had any knowledge of the existence of the drugs which were not found in either her actual or constructive possession. Accordingly, I would reverse and render Williams's convictions.
KING, C.J., AND ISHEE, J., JOIN THIS OPINION.
NOTES
[1] The evidence revealed that it was twenty-five pounds or approximately nine kilograms.