# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01783-COA

ANDREW GRAHAM, JR. A/K/A ANDREW GRAHAM          APPELLANT

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/2014 |
| TRIAL JUDGE: | HON. MICHAEL M. TAYLOR |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF CONSPIRACY AND SENTENCED, AS A HABITUAL OFFENDER, TO FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDERED TO PAY A $2,000 FINE |
| DISPOSITION: | AFFIRMED - 03/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND JAMES, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. A Lincoln County jury found Andrew Graham guilty of conspiracy to possess a controlled substance inside a correctional facility. *See* Miss. Code Ann. § 47-5-198 (Rev. 2011); Miss. Code Ann. § 97-1-1 (Rev. 2006). The Lincoln County Circuit Court sentenced

Graham, as a habitual offender, to five years in the custody of the Mississippi Department of Corrections (MDOC) and fined Graham $2,000. Graham appeals his conviction to this Court and raises the following issues: (1) whether his indictment was defective; (2) whether the evidence was legally sufficient to support his conviction; and (3) whether he was illegally sentenced as a habitual offender. Finding no error, we affirm.

**FACTS**

¶2.     A grand jury indicted Graham with the following charges in a two-count indictment: Count I, bringing marijuana, a controlled substance, into a correctional facility; and Count II, conspiracy to possess a controlled substance inside a correctional facility. Prior to trial, the State moved to amend Graham's indictment to reflect his habitual-offender status under Mississippi Code Annotated section 99-19-81 (Rev. 2007). During the pretrial hearing on its motion, the State offered into evidence certified copies of sentencing orders related to Graham's prior felony convictions to prove the predicate offenses to establish Graham's habitual-offender status. The circuit court took judicial notice of the certified copies of Graham's prior sentencing orders and admitted the orders into evidence. As the record reflects, the sentencing orders reflected that Graham possessed the following felony convictions: (1) burglary of an automobile and conspiracy in cause number 01-248-MS, with a sentence of three years in MDOC's custody; and (2) possession of a firearm by a convicted felon in cause number 05-104-LT, with a sentence of three years in MDOC's custody.

¶3.     The record reflects that Graham raised no objection to the State's motion to amend

2

his indictment to charge habitual-offender status under section 99-19-81. In addition, Graham failed to object to the validity or sufficiency of the State's evidence as to Graham's prior felony convictions that the circuit court admitted into evidence. After reviewing the State's evidence, the circuit court granted the State's motion to amend Graham's indictment to reflect his prior felony convictions and his habitual-offender status.

¶4. At Graham's trial, Officer Teresa Lawrence testified that she was on duty at the Lincoln County Jail on the evening of February 24, 2012. While the inmates spent time in the jail yard, Officer Lawrence monitored their activity from the control room. As she watched the monitors showing video from the yard's cameras, Officer Lawrence noticed some suspicious activity. Officer Lawrence testified that two doors opened onto the yard. The first door allowed inmates and jail personnel to access the yard from inside the jail. The second door was located in one of the yard's exterior walls. Officer Lawrence testified that this exterior door allowed access beyond the jail in case of an emergency. Officer Lawrence testified that she noticed Graham and another inmate standing by the yard's exterior door. As she watched the jail's video monitor, Officer Lawrence stated that she saw Graham and the other inmate bend down by the exterior door and "get stuff out from under the door." Based on the activity she observed, Officer Lawrence alerted Officers Larry Morris and Donald James.

¶5. After Officer Lawrence contacted them, Officer Morris and Officer James conducted a search of each inmate as he reentered the jail. Officer James testified that there were about

3

six or seven inmates to search. Terrance Hudson was the third inmate the officers searched. Officer James testified that he discovered three envelopes concealed on Hudson.

¶6. After searching Hudson, the officers searched Graham, who was the next inmate to reenter the jail. According to Officer Morris's testimony, Graham had complained of feeling cold before he went outside. As a result, the officers allowed Graham to take a blanket with him to the yard. As Graham attempted to reenter the jail behind Hudson, Officer Morris noticed that Graham's blanket looked bulky. Both officers testified that Graham attempted to pass the blanket over Officer James's head to Hudson. Officer James also testified that Graham made a statement to the effect that Officer James should "let him [(Graham)] go, don't worry about [the blanket.]"

¶7. Despite Graham's attempts to pass the blanket to Hudson, the officers intercepted the blanket before Graham could complete the transfer. After completing their searches of the remaining inmates, Officer Morris and Officer James took the confiscated items to the jail's control room. In addition to the envelopes in Hudson's possession, the officers discovered a yellow bag inside Graham's blanket that contained additional envelopes. Officer James testified that the envelopes concealed in Graham's blanket contained tobacco and what appeared to be marijuana. Later in the State's case-in-chief, the jury heard testimony that tests performed by the Mississippi Crime Laboratory confirmed the green leafy substance found in the envelopes was marijuana.

¶8. The jury also heard testimony from Chief Deputy Johnny Hall Jr. Chief Deputy Hall

testified that he received a phone call the evening of February 24, 2012, informing him that someone had tried to sneak contraband into the jail. After receiving the phone call, Chief Deputy Hall went to the jail and viewed the surveillance video. Consistent with other testimony presented by the State, Chief Deputy Hall testified that the video showed Graham, who had a blanket wrapped around him, and Hudson standing near the jail yard's exterior door. Chief Deputy Hall further testified that, upon inspecting the exterior jail-yard door, he observed a small crack in the door near the locking mechanism. According to Chief Deputy Hall's testimony, the crack was large enough to slide something through the opening.

¶9.     After hearing the evidence and testimony, the jury failed to reach a verdict on Count I of Graham's indictment for bringing marijuana, a controlled substance, into a correctional facility. However, the jury found Graham guilty of Count II for conspiracy to possess a controlled substance inside a correctional facility. On appeal, Graham attacks the sufficiency of his indictment as to Count II, and he attacks the sufficiency of the jury's verdict finding him guilty of Count II charged in the indictment.

¶10.    During Graham's sentencing hearing, the State sought to have Graham sentenced as a habitual offender. The circuit court referenced its pretrial ruling, which ordered Graham's indictment to be amended to reflect his prior felony convictions and his habitual-offender status. After referencing its previous ruling, the circuit court sentenced Graham, as a habitual offender, to five years in MDOC's custody and fined Graham $2,000.

¶11.    On appeal, Graham argues that the circuit court illegally sentenced him as a habitual

offender. As stated, however, the record reflects that Graham raised no objection to his enhanced sentence during the sentencing hearing. In addition, Graham's posttrial motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial failed to raise the issue. Instead Graham asserted the following assignments of error in his posttrial motion: (1) the verdict was contrary to the evidence; (2) the verdict was against the weight of the evidence; and (3) the circuit court erred by "altering the jury panel in the manner in which the panel was altered prior to trial."

¶12. Aggrieved by the circuit court's denial of his posttrial motion, Graham now appeals to this Court.

## DISCUSSION

### I. Whether Graham's indictment was defective.

¶13. Graham asserts his indictment was fatally defective for failure to specify the contraband that he conspired to possess in the correctional facility. "Whether an indictment is fatally defective is a question of law, which this Court reviews de novo." *Jones v. State*, 130 So. 3d 519, 524 (¶13) (Miss. Ct. App. 2013) (citing *Moten v. State*, 20 So. 3d 757, 759 (¶4) (Miss. Ct. App. 2009)).

¶14. The record reflects that Graham failed to raise this argument before the circuit court. "Generally, a trial judge will not be found in error on a matter not presented to him for decision. It is only in cases where the indictment does not charge an offense that defects in an indictment may be challenged on appeal for the first time." *Id.* at (¶14) (internal citations

6

and quotation marks omitted). During the trial court proceedings, Graham failed to preserve any objection to the sufficiency of his indictment. Therefore, absent a showing of jurisdictional error or actual prejudice, he waived complaints as to sufficiency. *See Brooks v. State*, 573 So. 2d 1350, 1353-54 (Miss. 1990); *Perkins v. State*, 487 So. 2d 791, 792 (Miss. 1986); *Jones v. State*, 356 So. 2d 1182, 1184 (Miss. 1978).[1]

¶15. As our caselaw establishes:

> The purpose of an indictment is to give the defendant reasonable notice of the charges against him in order that he may prepare an adequate defense. *Brawner v. State*, 947 So. 2d 254, 265 (¶31) (Miss. 2006) (citing *Brown v. State*, 890 So. 2d 901, 918 (¶61) (Miss. 2004)). Indictments must contain "a plain, concise[,] and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." URCCC 7.06. The ultimate test for the validity of an indictment is whether the defendant was prejudiced in preparing his defense. *Medina v. State*, 688 So. 2d 727, 730 (Miss. 1996).

*Jones*, 130 So. 3d at 524 (¶13).

¶16. The record reflects that Graham's indictment included the essential statutory elements of the charges against Graham, and the indictment provided Graham with reasonable notice of the charges so that he could prepare an adequate defense. *See id.*[2] The record also reflects

[1] *Cf.* Miss. Code Ann. § 99-39-21(1) (Rev. 2015) ("Failure by a prisoner to raise objections, defenses, claims, questions, issues[,] or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.").

[2] *See also Davis v. State*, 171 So. 3d 537, 540 (¶11) (Miss. Ct. App. 2015) (stating that the objective of an indictment is to provide the defendant with fair notice of the crime charged); *Shorter v. State*, 946 So. 2d 815, 818 (¶¶9-11) (Miss. Ct. App. 2007) (discussing

that the indictment tracked the language of the charging statute. Count I of Graham's indictment charged that Graham "did wilfully, unlawfully, feloniously[,] and knowingly bring [m]arihuana, a controlled substance, into the Lincoln County Jail, a correctional facility[.]" Count II of Graham's indictment further charged the following:

> Graham and Terrance D. Hudson did wilfully, unlawfully, feloniously[,] and knowingly conspire and agree, each with the other, and/or with some other person or persons to the grand jurors unknown, to commit the crime of possession of a controlled substance inside a correctional facility . . . ; all of said conduct alleged and set forth in counts one and two of this indictment having then and there been based on two or more acts or transactions connected together or constituting parts of a common scheme or plan[.]

¶17. Graham argues that his indictment failed to provide him with any notice of the controlled substance he allegedly conspired to possess in the correctional facility. Graham further contends it is "inconsequential" that Count I of his indictment charged him with unlawfully bringing marijuana into a correctional facility. According to Graham's argument, Count I is an entirely separate charge from Count II, and therefore, Count II's failure to specify the controlled substance that he was charged with conspiring to possess renders his indictment defective as to that charge.

¶18. To support his argument that his indictment is defective, Graham cites this Court's recent opinion in *Warren v. State*, 2013-KA-00926-COA, 2015 WL 326660 (Miss. Ct. App. Jan. 27, 2015). In *Warren*, the indictment charged the defendant with possession of a controlled substance in a correctional facility in violation of section 47-5-198. *Warren*, 2015

---

the essential elements of the defendant's indictment).

8

WL 326660, at *1 (¶1). On appeal, Warren argued her indictment was defective for failure to identify the controlled substance she was alleged to have possessed. *Id.* at *2 (¶7). Agreeing with Warren's argument, this Court reversed the circuit court's judgment and remanded the case. *Id.* at *3 (¶13).

¶19. Despite Graham's assertions on appeal, we find *Warren* distinguishable from the present facts. Unlike in *Warren*, where the indictment contained only one charge that entirely failed to specify the nature of the controlled substance at issue, Count I of Graham's indictment provided notice that marijuana constituted the controlled substance that Graham was charged with unlawfully possessing. Furthermore, Count II of Graham's indictment clearly acknowledged that "all [the] conduct alleged and set forth in counts one and two of [the] indictment [were] based on two or more acts or transactions connected together or constituting parts of a common scheme or plan[.]"

¶20. Mississippi Code Annotated section 99-7-2(1) (Rev. 2015) and Uniform Rule of Circuit and County Court 7.07(A) allow multiple-count indictments when the offenses are based upon the same act or transaction or when the offenses are based upon two or more acts or transactions that are connected or constitute parts of a common scheme or plan. Additionally, a defendant is procedurally barred from arguing an objection to a multi-count indictment on appeal where the defendant failed to raise the objection at trial. *See Patrick v. State*, 754 So. 2d 1194, 1195-96 (¶7) (Miss. 2000); *Thomas v. State*, 14 So. 3d 812, 816 (¶6) (Miss. Ct. App. 2009). The record reflects that Graham's indictment included all the

essential statutory elements of the charges against him and provided him with sufficient notice of the charges so that he suffered no prejudice in preparing his defense. *See Jones*, 130 So. 3d at 524 (¶13). Accordingly, we find that Graham's failure to raise this argument before the circuit court procedurally bars the issue on appeal.

## II. Whether the evidence was legally sufficient to support Graham's conviction.

¶21. In his next assignment of error, Graham asserts that the State's case as to the conspiracy charge was based completely on circumstantial evidence and speculation. Furthermore, Graham alleges that the State failed to show a "union of the minds" between himself and Hudson. Based on these arguments, Graham contends that the State failed to present sufficient evidence to convict him of conspiracy.

¶22. When addressing an argument regarding the legal sufficiency of the evidence, this Court applies the following standard of review:

> [T]he critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed. If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. The jury determines the credibility of witnesses and resolves conflicts in the evidence.

*Barron v. State*, 130 So. 3d 531, 536 (¶13) (Miss. Ct. App. 2013) (internal citations and quotation marks omitted).

¶23. In discussing the crime of conspiracy, our caselaw has previously stated:

> A conspiracy occurs when two or more persons conspire to commit a

10

crime. Miss. Code Ann. § 97-1-1(a) (Rev. 2006). . . . The supreme court has stated that:

> For there to be a conspiracy, "there must be recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purpose." The conspiracy agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators. Furthermore, the existence of a conspiracy, and a defendant's membership in it, may be proved entirely by circumstantial evidence.

*Williams v. State*, 984 So. 2d 989, 991-92 (¶14) (Miss. Ct. App. 2007) (quoting *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996)).

¶24. Upon review, we find the State presented sufficient evidence for a jury to determine that Graham entered into a common plan to possess a controlled substance inside a correctional facility. The testimony reflected that, on the evening of February 24, 2012, officers allowed Graham to take a blanket with him to the jail yard because he complained that he felt cold. Further testimony revealed that, as Officer Lawrence monitored the inmates' activity in the yard, she noticed suspicious behavior. Officer Lawrence testified that she observed Graham and another inmate stand by the yard's exterior door, bend down, and retrieve items from underneath the door. Chief Deputy Hall, who inspected the door after the incident, found a small opening that could allow someone to slip an item through the door near the locking mechanism.

¶25. After observing the two inmates' suspicious behavior, Officer Lawrence alerted Officer Morris and Officer James, who conducted a search of each inmate as he reentered

the jail. The officers discovered three envelopes concealed on Hudson's person. Graham, who was the next inmate in line, attempted to pass his blanket to Hudson before the officers searched him. Officer James testified that Graham even stated that Officer James should just allow Graham to pass the blanket to Hudson. The officers refused to allow the exchange, however, and they confiscated Graham's blanket.

¶26.    Upon examining the blanket in Graham's possession, the officers discovered a yellow bag. Inside the yellow bag, the officers discovered more envelopes. When the officers inspected the envelopes concealed on Hudson's person and inside Graham's blanket, they found tobacco and a green leafy substance that looked like marijuana. Tests performed by the Mississippi Crime Laboratory later confirmed that the green leafy substance in the envelopes was, in fact, marijuana. Besides the testimony about the events of February 24, 2012, the State offered into evidence the contraband discovered during the search of Hudson and Graham. In addition, the jury viewed the surveillance video the jail's cameras captured of the incident.

¶27.    As previously stated, "the existence of a conspiracy, and a defendant's membership in it, may be proved entirely by circumstantial evidence." *Williams*, 984 So. 2d at 991-92 (¶14) (quoting *Franklin*, 676 So. 2d at 288). Viewing the evidence in the record in the light most favorable to the State, we find that a rational juror could have found Graham guilty of conspiracy to possess a controlled substance inside a correctional facility. *See Barron*, 130 So. 3d at 536 (¶13). As a result, we find that this argument lacks merit.

12

**III.    Whether Graham was illegally sentenced as a habitual offender.**

¶28.    In his final assignment of error, Graham challenges his sentence as a habitual offender.  Graham asserts no argument that he lacked notice of the State's intent to seek an enhanced sentence under section 99-19-81.  Moreover, Graham raises no attack on the validity of his amended indictment or the prior felony convictions supporting his habitual-offender status.  Instead, Graham argues the State presented insufficient evidence during his sentencing hearing to prove his habitual-offender status.  Based on this argument, Graham asserts that the circuit court erred by sentencing him as a habitual offender.

¶29.    As the record reflects, Graham raised no objection during the pretrial hearing to the State's motion to amend his indictment to reflect his prior felony convictions and his habitual-offender status.  In addition, during his sentencing hearing, Graham failed to object to his sentence as a habitual offender.  Graham again failed to attack his sentence in his motion for a JNOV or, in the alternative, a new trial.  As our caselaw establishes, Graham's failure to raise an argument before the circuit court challenging his sentence procedurally bars this issue from appellate review.  *See Conner v. State*, 138 So. 3d 143, 150 (¶19) (Miss. 2014); *Heidelberg v. State*, 45 So. 3d 730, 732 (¶6) (Miss. Ct. App. 2010).  "The supreme court and this court have previously made clear that:  'When an accused fails to object to the habitual[-]offender issue during the sentencing phase, he is procedurally barred to do so [for] the first time on appeal.'"  *Heidelberg*, 45 So. 3d at 732 (¶6) (quoting *Sims v. State*, 775 So. 2d 1291, 1294 (¶16) (Miss. Ct. App. 2000)).

13

¶30. Recognizing the procedural bar to his argument, Graham asserts that this Court should review the issue for plain error. "The plain-error doctrine provides for appellate review of obvious errors not properly raised by the defendant at trial, which affect a defendant's 'fundamental, substantive rights.'" *Id.* at (¶7) (quoting *Smith v. State*, 986 So. 2d 290, 294 (¶10) (Miss. 2008)). To prove plain error, Graham must show "(1) an error at the trial level (2) that resulted in a manifest miscarriage of justice." *Id.* (citing *Stephens v. State*, 911 So. 2d 424, 432 (¶19) (Miss. 2005)).

¶31. "A defendant has a fundamental right of freedom from an illegal sentence." *Conner*, 138 So. 3d at 150 (¶19). "Before a court may sentence a defendant under section 99-19-81, the State must properly charge the accused as a habitual offender and 'then prove the prior offenses by competent evidence beyond a reasonable doubt.'" *Heidelberg*, 45 So. 3d at 733 (¶9) (quoting *Joiner v. State*, 32 So. 3d 542, 544 (¶12) (Miss. Ct. App. 2010)). In addition, "[t]he accused must have 'a reasonable opportunity to challenge the State's proof.'" *Id.* (quoting *Joiner*, 32 So. 3d at 544 (¶12)).

¶32. The record reflects that, prior to trial, the State moved to amend Graham's indictment to charge him as a habitual offender under section 99-19-81. During the pretrial hearing on the State's motion, the State reminded the circuit court that the court had amended Graham's indictment in a previous case to charge habitual-offender status. However, Graham was later found not guilty of the crime charged in the previous case.

¶33. At the pretrial hearing in the present case, the State supported its motion to amend

14

Graham's indictment by offering certified copies of the sentencing orders related to Graham's prior felony convictions. Graham raised no objection to the evidence or the State's motion, and the circuit court then admitted the prior sentencing orders into evidence. The circuit court then granted the State's motion to amend Graham's indictment to reflect his prior felony convictions and his habitual-offender status.

¶34. During sentencing, the record reflects that the circuit court referenced its pretrial ruling to amend Graham's indictment to reflect his prior felony convictions and habitual-offender status. The circuit court then sentenced Graham, as a habitual offender, to five years in MDOC's custody and fined Graham $2,000. As the record reflects, Graham raised no objection to his sentence as a habitual offender either during the sentencing hearing or in his posttrial motion for a JNOV or, in the alternative, a new trial.

¶35. In *Heidelberg*, this Court decided a case similar to the present matter. We summarized the facts and issues in *Heidelberg* as follows:

> Before trial, the State moved to amend the indictment to charge Heidelberg as a habitual offender. The State provided certified copies of two sentencing orders documenting Heidelberg's prior felony convictions. And the circuit judge ordered the indictment amended to reflect Heidelberg's prior felony convictions and habitual-offender status. After the jury returned a guilty verdict, the State again advised the circuit judge that Heidelberg had two prior felony convictions. The judge then sentenced Heidelberg as a habitual offender to life in the custody of the [MDOC] without eligibility for parole or probation. On appeal, Heidelberg claims the State's failure to offer the certified sentencing orders during the sentencing hearing requires reversal of his sentence. Because Heidelberg raises this issue for the first time on appeal, we find it procedurally barred. Further, since Heidelberg neither contests the validity or sufficiency of his prior felony convictions supporting his enhanced sentence nor otherwise points to any notice-based deficiencies in the amended

15

charging document, we affirm.

*Heidelberg*, 45 So. 3d at 731 (¶1).

¶36. The record here reflects that, by the time of Graham's sentencing hearing, no uncertainty existed as to the State's intention to seek an enhanced penalty under section 99-19-81. Furthermore, our caselaw establishes that sentencing orders constitute competent evidence of a defendant's prior convictions. *See Heidelberg*, 45 So. 3d at 733 (¶14). Although Graham possessed sufficient notice of the State's intent to seek an enhanced sentence, and although he possessed ample opportunity to challenge the State's proof, Graham failed to do so. In addition, like the defendant in *Heidelberg*, Graham "neither contests the validity or sufficiency of his prior felony convictions supporting his enhanced sentence nor otherwise points to any notice-based deficiencies in the amended charging document[.]" *Id.* at 731 (¶1).

¶37. After reviewing the facts in the record and applicable caselaw, we find that no manifest miscarriage of justice resulted from Graham's sentence as a habitual offender. *See id.* at 732 (¶7). As a result, we decline to review Graham's claim of error as plain error, and we find no merit to Graham's argument that the circuit court imposed an illegal sentence against him.

¶38. **THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF CONSPIRACY AND SENTENCE, AS A HABITUAL OFFENDER, OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A FINE OF $2,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, JAMES AND WILSON, JJ., CONCUR. IRVING, P.J., AND FAIR, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.**